[No. S013292. July 11, 1991.]

PEÑASQUITOS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
WILLIAM BARBEE et al., Real Parties in Interest.

CROW PACIFIC DEVELOPMENT CORPORATION et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ANDRES B. BISMONTE et al., Real Parties in Interest.

COUNSEL

Wright & L'Estrange, Robert C. Wright, Theresa L. Osterman, Timothy C. Stutler, Joseph T. Ergastolo, Ronald L. Donahoo, Higgs, Fletcher & Mack and John M. Morris for Petitioner.

No appearance for Respondent.

Virginia R. Gilson, Melissa K. Seifer, Robert B. Gerard and Michael T. Pines for Real Parties in Interest.

Opinion

**KENNARD, J.**—A California corporation may dissolve by following the procedure set forth in the Corporations Code. After it has dissolved, a corporation, although no longer permitted to do business as a going concern, continues to exist for purposes of winding up its affairs and, in particular, for discharging obligations and defending lawsuits. The question we face in this case is whether homeowners may bring suit for construction defects against the corporations that graded the lots and built the homes, when those corporations had dissolved before the homeowners' discovery of the construction defects.

Although a party may not sue the shareholders of a dissolved corporation on a claim that arose after the dissolution (Corp. Code, § 2011, subd. (a) [all further statutory references are to this code unless otherwise stated]; *Pacific Scene, Inc.* v. *Peñasquitos, Inc.* (1988) 46 Cal.3d 407, 417 [250 Cal.Rptr. 651, 758 P.2d 1182]), analysis of the statutory scheme discloses a legislative intent to permit parties to bring suit against dissolved corporations for damages that occur or are discovered after dissolution.

## I. Facts

Owners of single-family homes in San Diego County brought the underlying actions against Peñasquitos, Inc. (Peñasquitos) and Crow Pacific Development Corporation (Crow Pacific)[1] to recover damages, on a variety of legal theories, for construction defects. Crow Pacific built the homes on lots graded and prepared by Peñasquitos; the homes are all located within a subdivision commonly known as "Peñasquitos Bluffs, Unit No. 4." Because the actions have many facts and issues in common, they were consolidated in July 1988.

In each of these actions, the earliest of which was filed in April 1986, the plaintiff homeowners alleged discovery of the construction defects within three years of commencing suit. Under their own allegations, therefore, plaintiffs must have discovered the defects no sooner than April 1983. Peñasquitos and Crow Pacific had each completed a statutory dissolution in 1979, more than three years before discovery of the construction defects.

Peñasquitos demurred to the complaints and Crow Pacific moved for judgment on the pleadings, each arguing that because the causes of action arose only on discovery, and because discovery occurred after it had

---

[1] Crow Pacific, which had been incorporated in April 1973, changed its name to GWC Development Corporation in March 1977. In this litigation, however, it was sued under its former name.

dissolved as a corporation, it was not subject to suit. The trial court overruled the demurrer and denied the motion for judgment on the pleadings.

Peñasquitos and Crow Pacific each petitioned the Court of Appeal for a writ of mandate. Peñasquitos sought a writ directing the trial court to sustain its demurrer; Crow Pacific sought a writ directing the trial court to grant its motion for judgment on the pleadings. The Court of Appeal consolidated the two writ matters and granted the petitions, holding that a dissolved corporation could not be sued on a cause of action that arose after dissolution. We granted review.

## II. Discussion

At common law, the dissolution of a corporation was treated like the death of a natural person: Once it had dissolved, a corporation ceased to exist and could not sue or be sued, and any actions pending against it abated. (*Oklahoma Gas Co.* v. *Oklahoma* (1927) 273 U.S. 257, 259 [71 L.Ed. 634, 635-636, 47 S.Ct. 391]; *Crossman* v. *Vivienda Water Co.* (1907) 150 Cal. 575, 580 [89 P. 335]; *Riley* v. *Fitzgerald* (1986) 178 Cal.App.3d 871, 878 [223 Cal.Rptr. 889]; *Hartman* v. *Hollingsworth* (1967) 255 Cal.App.2d 579, 581 [63 Cal.Rptr. 563]; *Stubbs* v. *Jones* (1953) 121 Cal.App.2d 218, 223 [263 P.2d 100].)

California no longer follows the common law rules with respect to either the death of a natural person or the dissolution of a corporation. Except as provided by statute, "no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's personal representative." (Prob. Code, § 573.) If the decedent had liability insurance, the action may be maintained against the decedent's estate, with service upon an agent of the insurer. (*Id.*, §§ 550-555.)[2]

California abandoned the common law rule governing the effect of a corporation's dissolution by the enactment of former Civil Code section 399 in 1929.[3] The nature of the change has been described in these terms: " 'The

---

[2] The Probate Code has been reorganized, effective July 1, 1991 (Stats. 1990, ch. 79, § 14), but the sections cited in this paragraph have been reenacted with the same numbers.

[3] As enacted, former section 399 of the Civil Code provided: "All corporations, whether they expire by their own limitation, by forfeiture of charter by order of court, or are otherwise dissolved, shall nevertheless continue to exist for the purpose of winding up their affairs, prosecuting and defending actions by or against them, and of enabling them to collect and discharge obligations, to dispose of and convey their property, and to collect and divide their assets, but not for the purpose of continuing the business for which the corporation was established. . . ." (Stats. 1929, ch. 711, § 29, p. 1277.)

This section of the Civil Code was revised in 1931 (Stats. 1931, ch. 862, § 2, p. 1821) and again in 1933 (Stats. 1933, ch. 533, § 72, p. 1403). When the Corporations Code was enacted

policy was adopted in 1929 of providing for the continuation of the corporate existence indefinitely for the purpose of winding up and settling the affairs of corporations which had been dissolved, rather than extinguishing the corporate existence and giving the administration of the surviving assets and liabilities to trustees. Similar provisions are found in the statutes of New Jersey, New York and Ohio. By these sections provision is made that a corporation after dissolution, voluntary or involuntary, shall nevertheless continue to exist for an indefinite period as a legal entity for the purpose of winding up its affairs.'" (*J. C. Peacock, Inc.* v. *Hasko* (1961) 196 Cal.App.2d 363, 368 [16 Cal.Rptr. 525], quoting Ballantine & Sterling, Cal. Corporation Laws (1949 ed.) pp. 477-478; see also, Note, *Foreign Corporations: Continuance of Existence After Dissolution* (1947) 35 Cal.L.Rev. 306, 309 ["California Civil Code section 399 extends the life of a dissolved corporation indefinitely for purposes of winding up."].)

The statutory scheme enacted in 1929 for the postdissolution survival of corporations has endured with relatively few changes. Section 1905, subdivision (b), now provides that when the certificate of dissolution is filed, "the corporate existence shall cease, *except for the purpose of further winding up if needed.*" (Italics added.) Section 2010, subdivision (a), further explains the purposes for which the corporate existence continues after dissolution: "A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and *defending actions* by or *against it* and enabling it to collect and *discharge obligations*, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." (Italics added.)

 Peñasquitos and Crow Pacific appear to argue that continued existence for the purpose of "defending actions" is not equivalent to existence for the purpose of being sued. If, for example, a party filed suit against a dissolved corporation, the corporation might appear and defend precisely on the ground that as a dissolved corporation it could *not* be sued.

Although facially plausible, this construction is vulnerable to a number of telling objections. One objection is that the proposed construction cannot be reconciled with section 2011, subdivision (b), which provides for service of summons on a dissolved corporation.[4] If a dissolved corporation could not

---

in 1947, this section was repealed and the substance reenacted as section 5400. (Stats. 1947, ch. 1038, § 5400, p. 2399.) It became section 2010 in the 1975 reorganization of the Corporations Code. (Stats. 1975, ch. 682, § 7, p. 1609.)

[4] "Summons or other process against such a [dissolved] corporation may be served by delivering a copy thereof to an officer, director or person having charge of its assets or, if no such person can be found, to any agent upon whom process might be served at the time of

be sued, this provision would serve no useful role in the statutory scheme.[5] Thus, the proposed construction would violate the rule of statutory construction that every word, phrase, and sentence in a statute should, if possible, be given significance. (*Steinberg* v. *Amplica, Inc.* (1986) 42 Cal.3d 1198, 1205 [233 Cal.Rptr. 249, 729 P.2d 683].)

Further, the proposed construction is analytically incoherent. At common law, dissolution extinguished the corporation's existence; this corporate "death" explained why the corporation could not be sued and why any judgment taken against it was void. Not only would it be unfair to sue an entity that was incapable of defending itself, it would also be senseless to render judgment against an entity that had become nonexistent. The modern survival statutes render these rationales inapplicable. It would be incongruous to allow a corporation that exists for purposes of defending actions and discharging obligations to defend a lawsuit on the basis that it did not exist.

Finally, courts have repeatedly construed section 2010, its predecessors, and similar language in the statutes of other jurisdictions, as permitting parties to bring suit against dissolved corporations.

In an early case, the New Jersey Supreme Court held that a statute continuing the existence of dissolved corporations for the purpose of "defending suits against them" meant that parties could maintain suits against dissolved corporations "at law or in equity, in contract or tort, or of what nature soever, and whether begun before or after dissolution." (*Hould* v. *John P. Squire & Co.* (1911) 81 N.J. 103 [79 A. 282, 283].) This case has been often cited and followed. (See *Newmark* v. *Abeel* (S.D.N.Y. 1952) 102 F.Supp. 993, 993, fn. 1; *Sisk* v. *Old Hickory Motor Freight* (1943) 222 N.C. 631 [24 S.E.2d 488, 489-490]; *Floerchinger* v. *Sioux Falls Gas Co.* (1942) 68 S.D. 543 [5 N.W.2d 55, 56]; *Lynchburg Colliery Co.* v. *Gauley & E. Ry. Co.* (1922) 92 W.Va. 144 [114 S.E. 462, 463-464].)

---

dissolution. If none of such persons can be found with due diligence and it is so shown by affidavit to the satisfaction of the court, then the court may make an order that summons or other process be served upon the dissolved corporation by personally delivering a copy thereof, together with a copy of the order, to the Secretary of State or an assistant or deputy secretary of state. Service in this manner is deemed complete on the 10th day after delivery of the process to the Secretary of State." (§ 2011, subd. (b); see also, Code Civ. Proc., § 416.20.)

[5] Section 2011, subdivision (c) provides that a dissolved corporation "shall survive and continue to exist indefinitely for the purpose of being sued in any quiet title action." But the provision for service of process on a dissolved corporation cannot have been intended solely for use in quiet title actions because the provision for service of process dates from 1931 (former Civ. Code, § 402a, enacted by Stats. 1931, ch. 862, § 2, p. 1825), whereas the quiet title suit provision was enacted only in 1963 (see former § 3305.1, enacted by Stats. 1963, ch. 1966, § 1, p. 4045).

The same interpretation has been adopted for our California statutes. In 1959, a federal district court construed former section 5400, the predecessor of section 2010, to permit a California corporation to be sued after its dissolution for violation of the Sherman Act (15 U.S.C. § 1). (*United States v. San Diego Grocers Association, Inc.* (S.D.Cal. 1959) 177 F.Supp. 352, 354.) In 1971, a federal appellate court elected to follow this interpretation of California law. (*United States v. BBF Liquidating, Inc.* (9th Cir. 1971) 450 F.2d 938, 938, cert. den. (1972) 405 U.S. 1065 [31 L.Ed.2d 794, 92 S.Ct. 1494]; accord, *United States v. Mobile Materials, Inc.* (10th Cir. 1985) 776 F.2d 1476 [construing Oklahoma statute virtually identical to § 2010]; see also *A B C Brewing Corporation v. Commissioner of Int. Rev.* (9th Cir. 1955) 224 F.2d 483, 489 [California law recognizes "the continuance of a corporation for the purpose of litigating its actions after dissolution, despite its apparent legal death."].)

Our state appellate courts first faced the issue in a case involving plaintiffs who had brought 13 actions against a dissolved Illinois corporation for asbestos-related injuries. The trial court denied the corporation's motion to quash service of process, and the corporation sought review by petition for writ of mandate. The Court of Appeal denied the petition. It concluded that the Illinois corporation had sufficient minimum contacts with California to justify suit in this state, and that the appropriate procedure to challenge whether a dissolved corporation was subject to suit was by demurrer or motion for summary judgment, rather than by a motion to quash service. (*North American Asbestos Corp. v. Superior Court* (1982) 128 Cal.App.3d 138, 141 [179 Cal.Rptr. 889] (hereafter *North American Asbestos I*).)

For the guidance of the trial court in further proceedings, the Court of Appeal nonetheless discussed whether the dissolved corporation could be sued. Under section 2010, the court said, "there is no time limitation for suing a dissolved corporation for injuries arising out of its predissolution activities." (*North American Asbestos I, supra*, 128 Cal.App.3d 138, 143.) California law would permit the lawsuits to continue, the court said, if the statute applied to the Illinois corporation. (*Id.* at p. 144.) But the court concluded that section 2010 applied only to suits against dissolved California corporations and therefore the trial court would be required to decide the issue under Illinois law. (128 Cal.App.3d at p. 144.)

The case returned to the Court of Appeal after the trial court denied a summary judgment motion by the dissolved Illinois corporation. (*North American Asbestos Corp. v. Superior Court* (1986) 180 Cal.App.3d 902 [225 Cal.Rptr. 877] (hereafter *North American Asbestos II*).) The Court of Appeal again stated that under section 2010, "there is no time limitation for suing a dissolved corporation for injuries arising out of its predissolution

activities (*North American Asbestos Corp.* v. *Superior Court* (1982) 128 Cal.App.3d 138, 143), other than the time prescribed by the applicable statute of limitations." (*North American Asbestos II, supra,* at p. 904.) Rejecting its earlier conclusion, the Court of Appeal held that section 2010 is not limited to dissolved California corporations, but also applies to dissolved foreign corporations. The court therefore denied the dissolved corporation's petition for writ of mandate and allowed the actions to proceed.

During the interval between these two Court of Appeal decisions, a federal appellate court, applying California law in a diversity action, held that the plaintiff could maintain an action for negligent design and construction against a California corporation even though the action was filed after the corporation had dissolved. (*Abington Heights School Dist.* v. *Speedspace* (3d Cir. 1982) 693 F.2d 284, 286.) Citing *North American Asbestos I, supra,* 128 Cal.App.3d at page 144, the federal court concluded that under California law a dissolved corporation "is subject to suit arising out of its pre-dissolution activities, with the only time bar being that of an applicable general statute of limitations." (*Abington Heights School Dist.* v. *Speedspace, supra,* at p. 286.)

Finally, in a recent decision, one of the Courts of Appeal has held that a dissolved corporation is subject to suit on a cross-complaint filed against it after its dissolution. (*Allen* v. *Southland Plumbing, Inc.* (1988) 201 Cal.App.3d 60, 63 [246 Cal.Rptr. 860].)

Because we conclude that section 2010 permits parties to sue dissolved corporations, we must determine whether these postdissolution actions are limited to those brought on predissolution claims, that is, claims that arose before the corporation filed its notice of dissolution.

■ On its face, section 2010 draws no distinction between pre- and postdissolution claims. This is particularly significant in view of the language of section 2011, subdivision (a), which limits postdissolution actions against the dissolved corporation's shareholders to those on causes of action "arising prior to [the corporation's] dissolution."[6] The Legislature's use of this restrictive language in the provision governing suits against shareholders, while omitting it from the provision governing suits against the dissolved corporations themselves, strongly implies that the Legislature did not intend to restrict suits against dissolved corporations to those on predissolution claims. ■ " 'Where a statute, with reference to one subject

---

[6]"In all cases where a corporation has been dissolved, the shareholders may be sued in the corporate name of such corporation upon any cause of action against the corporation arising prior to its dissolution. This section is procedural in nature and is not intended to determine liability." (§ 2011, subd. (a); see also, § 2009 [recovery of improper distributions].)

contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed.'" (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; accord, *People* v. *Drake* (1977) 19 Cal.3d 749, 755 [139 Cal.Rptr. 720, 566 P.2d 622]; *Richfield Oil Corp.* v. *Crawford* (1952) 39 Cal.2d 729, 735 [249 P.2d 600].)

Courts in other jurisdictions have construed statutes with language similar to section 2010 to permit actions on postdissolution claims. Thus, the Nevada Supreme Court has construed a Nevada statute providing "that for three years after dissolution a corporation shall continue as a body corporate for the purpose of prosecuting and defending suits" as allowing a corporation to be sued during the three-year period on a claim that "arose after the filing of the certificate of dissolution." (*Seavy* v. *I. X. L. Laundry Co.* (1941) 60 Nev. 324 [108 P.2d 853, 855], overruled on an unrelated point in *Turpel* v. *Sayles* (1985) 101 Nev. 35 [692 P.2d 1290].) Similarly, the Alabama Supreme Court has construed the pertinent Alabama statutes as permitting tort actions against dissolved corporations on causes of action that arose after dissolution. (*Southeastern Const. Co.* v. *Robbins* (1946) 248 Ala. 367 [27 So.2d 705, 707].) In each of these cases, liability was based on acts of corporate agents committed after dissolution and during the course of winding up the corporation's affairs.

More recently, a federal district court, applying Virginia law, concluded that a party could sue a dissolved corporation where, as here, the cause of action arose after dissolution but was based on the corporation's predissolution conduct. (*Oliver* v. *American Motors Corp.* (E.D.Va. 1985) 616 F.Supp. 714, 717.) The court explained: "[A] number of courts in analogous situations have recognized that during the windup process of a dissolved corporation the corporation itself may be liable for injuries caused during the windup phase. [Citations.] If a corporation can be liable for its acts occurring after dissolution, it seems logical . . . that a corporation should be liable for acts occurring prior to dissolution which cause injury subsequent to dissolution." (*Ibid.*) Other courts, applying the laws of various jurisdictions, have likewise concluded that a plaintiff could sue a dissolved corporation for damage or injury caused by the corporation's predissolution activities even though the plaintiff sustained or discovered the damage or injury after the corporation had dissolved. (*Gassert* v. *Commercial Mechanisms, Inc.* (Minn. 1979) 277 N.W.2d 392, 394 [Mo. law]; *Naugher* v. *Fox River Tractor Co.* (N.D.Miss. 1977) 446 F.Supp. 1281, 1283 [Miss. law]; *Chadwick* v. *Air Reduction Company* (N.D.Ohio 1965) 239 F.Supp. 247, 251 [Ohio law].)

We note that the drafters of the 1984 Revised Model Business Corporation Act (the Act) have abandoned the distinction drawn in earlier versions

between pre- and postdissolution causes of action. Under section 14.07, subdivision (c) of the Act, a dissolved corporation may be sued on any cause of action—whether arising before or after dissolution—so long as the plaintiff files the action within five years after the date of publication of the notice of dissolution. The comment to this provision explains: "The solution adopted in section 14.07 is to continue the liability of a dissolved corporation for subsequent claims for a period of five years after it publishes notice of dissolution. It is recognized that a five year cut-off is itself arbitrary, but it is believed that the great bulk of post dissolution claims will arise during this period. This provision is therefore believed to be a reasonable compromise between the competing considerations of providing a remedy to injured plaintiffs and providing a period of repose after which dissolved corporations may distribute remaining assets free of all claims and shareholders may receive them secure in the knowledge that they may not be reclaimed." (3 Model Bus. Corp. Act Ann. (3d ed.) § 14.07, com. at p. 1501.)

■■ ■■ We are persuaded that section 2010, like the 1984 Revised Model Business Corporation Act, permits the assertion of postdissolution claims against dissolved corporations. Unlike the Act, our statutes permit the corporate existence to continue indefinitely for the purpose of such actions.

Under our statutory scheme, the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity. In *Boyle* v. *Lakeview Creamery Co.* (1937) 9 Cal.2d 16 [68 P.2d 968], we stated that the "only purpose" of former Civil Code section 399, a predecessor of section 2010, was "to stop further doing of business as a going concern, and limit corporate activities to winding up." (9 Cal.2d at p. 20.) Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business. (See Marcus, *Suability of Dissolved Corporations—A Study in Interstate and Federal-state Relationships* (1945) 58 Harv.L.Rev. 675, 686.)

Defending a lawsuit brought for injuries caused by predissolution activities is not the "doing of business as a going concern." Rather, a claim for damages based on the corporation's predissolution activities is an affair of the corporation needing to be wound up after the corporation's normal business activities have ceased. Participating in a judicial resolution of such claims is part of the winding-up process for which section 2010 expressly requires the dissolved corporation's existence to continue. Thus, our conclusion that plaintiffs may sue dissolved corporations on postdissolution claims is consistent with the language and purpose of section 2010.

We perceive nothing unreasonable or improbable in a construction that permits enforcement of postdissolution claims against dissolved corpora-

tions but not against their shareholders. Deciding what actions may be asserted against dissolved corporations requires a balancing of the interest in compensating just claims against the interest in finality and repose for dissolved corporations. But the interest in repose consists largely, if not entirely, in the shareholders' interest in the prompt distribution and secure possession of the corporation's remaining assets. (See *Pacific Scene, Inc.* v. *Peñasquitos, Inc., supra,* 46 Cal.3d 407, 415-416.) Once that interest has been protected, it is difficult to discern any other interest of sufficient weight to justify barring a potentially meritorious cause of action asserted within the relevant limitations period.

At some point, shareholders should be permitted to recover their investments in a defunct corporation and put the funds to other uses free of claims by the dissolved corporation's creditors. The construction we adopt poses no threat to this interest. Under California law, a corporation cannot distribute its assets, nor may it dissolve, until its officers have paid or made provision for all known debts and obligations. (§§ 1905, 2004.) But a claim that has not yet arisen is not a known debt or obligation for which the officers of a corporation undergoing dissolution must provide. (*Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22, 31 [136 Cal.Rptr. 574, 560 P.2d 3].) Because the distribution of assets occurs before dissolution, not after, and because no provision need be made for postdissolution claims, recognizing a plaintiff's right to sue a dissolved corporation on a postdissolution claim will not delay or complicate either the distribution of assets or the filing of the certificate of dissolution.

Once the corporation's assets have been properly distributed to the shareholders, the assets are beyond the reach of plaintiffs who possess claims that arose after dissolution. (§ 2011, subd. (a); *Pacific Scene, Inc.* v. *Peñasquitos, Inc., supra,* 46 Cal.3d 407, 417.) This means that bringing suit against a dissolved corporation on a postdissolution claim will often be a pointless exercise, because the corporation will have no assets with which to satisfy a judgment against it. When a dissolved corporation lacks the means to satisfy a monetary judgment, there is no need to erect legal barriers to protect it from litigation (assuming such barriers were otherwise desirable), because plaintiffs are unlikely to incur the cost of litigation with no hope of recovery.

Plaintiffs will be likely to assert postdissolution causes of action only if there is a prospect of recovery from the dissolved corporation's liability insurance, from undistributed assets, or from assets of the corporation discovered after dissolution. If corporate assets are undistributed or

discovered after dissolution,[7] the winding-up process has not been completed; the interest in finality and repose cannot justify barring a postdissolution claim so long as the corporation holds undistributed assets.[8] Similarly, if the corporation has liability insurance coverage, its dissolution provides no reason to excuse the insurer from defending the action and indemnifying those injured by the predissolution activities of its insured, just as a corporation's insolvency or bankruptcy does not release its insurer from payment for damages the corporation has caused (see Ins. Code, § 11580, subd. (b)(1)).

Here, in reaching the conclusion that a dissolved corporation could not be sued on a postdissolution claim, the Court of Appeal relied on our decision in *Pacific Scene, Inc.* v. *Peñasquitos, Inc., supra,* 46 Cal.3d 407 (hereafter *Pacific Scene*). This reliance was misplaced.

In *Pacific Scene, supra,* 46 Cal.3d 407, nine homeowners sued a builder for construction defects. The builder cross-complained against Peñasquitos, Inc. (the same corporation being sued here), which had graded the lots and sold them to the builder. The trial court sustained Peñasquitos's demurrer on the ground that section 2011, subdivision (a) (see fn. 6, *ante*), barred suits against dissolved corporations on claims arising after dissolution. On the builder's appeal, the Court of Appeal agreed Peñasquitos could not be sued, but reversed with directions to allow the builder to cross-complain against Peñasquitos's former shareholders under the equitable "trust fund" theory. We granted review and reversed the Court of Appeal's judgment, concluding "that the Legislature has generally occupied the field with respect to the remedies available against the former shareholders of dissolved corporations, thus preempting antecedent common law causes of action, and that the trust fund theory furthermore conflicts with specific provisions of the Corporations Code." (*Pacific Scene, supra,* at pp. 409-410.) Our opinion did not address the trial court's ruling sustaining the demurrer against the dissolved corporation itself.

---

[7] A dissolved corporation continues to exist indefinitely for purposes of collecting and distributing its assets: "Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly." (§ 2010, subd. (c).)

[8] The after-discovered asset could be a postdissolution claim. If a dissolved corporation possessed a claim that arose after its dissolution, presumably it would be permitted to assert it, just as an estate is permitted to prosecute a cause of action arising after the decedent's death (*Carr* v. *Progressive Casualty Ins. Co.* (1984) 152 Cal.App.3d 881, 890 [199 Cal.Rptr. 835]).

We reasoned that by enacting sections 2009[9] and 2011, subdivision (a), the Legislature had occupied the field of creditors' remedies against the shareholders of dissolved corporations, to the exclusion of the equitable trust fund doctrine. (*Pacific Scene, supra,* 46 Cal.3d at p. 413.) We also concluded that section 2011, by negative implication, bars suits against shareholders on causes of action that arose after dissolution of the corporation. (46 Cal.3d at p. 417.) We observed that a contrary interpretation would conflict "with the statutory objectives of certainty and finality" in corporate dissolutions. (*Ibid.*)

Because *Pacific Scene, supra,* 46 Cal.3d 407, was concerned only with actions against shareholders, not actions against dissolved corporations, and because it focused primarily on the preemption question, it is not controlling on the issue now before us.

We are also aware of the decision in *Levin Metals Corp.* v. *Parr-Richmond Terminal Co.* (9th Cir. 1987) 817 F.2d 1448, in which a plaintiff brought suit under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C. §§ 9601-9657) against a corporation that had dissolved before CERCLA was enacted. The trial court dismissed the action, and the appellate court affirmed. It declined to decide whether section 2010 permitted a dissolved corporation's existence to continue for purposes of being sued on causes of action that arose after the corporation was dissolved. It stated: "[I]t is sufficient for the purposes of this case that, considering the section's general purpose of authorizing dissolved corporations to wind up their affairs, it nowhere purports to prolong the life of a dissolved corporation so that, on these facts, Levin may maintain this action even though CERCLA was enacted some nine years after Parr Industrial's demise." (817 F.2d at p. 1450.) To the extent the cause of action was based on a statute enacted after dissolution, the case is distinguishable. To the extent that the decision may be construed as holding that a dissolved corporation may not be sued on a claim that arose after dissolution, we conclude that it is incorrect.

### III. CONCLUSION

Our review of the statutory scheme leads us to conclude that by the terms of the Corporations Code the Legislature has decided not to permit a dis-

---

[9] "(a) Whenever in the process of winding up a corporation any distribution of assets has been made . . . without prior payment or adequate provision for payment of any of the debts and liabilities of the corporation, any amount so improperly distributed to any shareholder may be recovered by the corporation. . . . [¶] (b) Suit may be brought in the name of the corporation to enforce the liability under subdivision (a) against any or all shareholders receiving the distribution by any one or more creditors of the corporation, whether or not they have reduced their claims to judgment." (§ 2009.)

solved corporation to make its final exit so long as obligations resulting from its predissolution activities remain undischarged. Although an injured party whose claim arises after dissolution is generally precluded from pursuing a dissolved corporation's assets in the hands of its former shareholders, there is no legal barrier to a suit against a dissolved corporation itself for injury or damage that is caused by the corporation's predissolution activities but occurs or is discovered after the dissolution.

The judgment of the Court of Appeal is reversed, and the matter is remanded to the Court of Appeal with directions to deny the petitions for writ of mandate.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arabian, J., and Baxter, J., concurred.