[No. C010806. Third Dist. June 8, 1992.]

PHYLLIS LAWLER et al., Plaintiffs and Appellants, v.
CITY OF REDDING, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

## COUNSEL

Carr, Kennedy, Peterson & Frost and Daniel S. Frost for Plaintiffs and Appellants.

Randall A. Hays, City Attorney, for Defendant and Respondent.

## OPINION

SCOTLAND, J.—Defendant City of Redding (Redding) authorized construction of the Riverland Recreation Area, a sports complex containing six softball diamonds and two soccer fields on city-owned land in unincorporated Shasta County. Pursuant to the California Environmental Quality Act (CEQA), Redding approved a final environmental impact report (EIR) for the project and adopted a statement of overriding considerations and findings. Redding found that seven alternative sites for the project and two alternative uses of the chosen site were unacceptable. Redding also found:

the project would not be growth-inducing because it "will not involve extension or improvement of off-site infrastructure systems" or require new streets or roadway extensions, and because the proposed roadway modifications are needed to relieve already existing congestion; the traffic improvements and mitigations recommended in the EIR adequately address the project's traffic impacts, and pedestrian safety will be adequately addressed by the development of a paved pedestrian path; project-generated noise will be sufficiently mitigated by adopting a 50-foot setback from adjacent property lines, restricting public address system use to major events, and prohibiting use of the facility after midnight; and project-generated illumination and glare can be substantially reduced by various means.

In a petition for writ of mandate, plaintiffs contended Redding's approval of the project is invalid because, among other things, the above noted findings are inadequate under CEQA and the project is inconsistent with Shasta County's general plan. The trial court rejected these contentions, ruling that Redding's approval of the final EIR is supported by substantial evidence and that cities and counties are exempt from each other's planning and zoning policies.

On appeal, plaintiffs claim the EIR is defective because it: (1) failed to consider all reasonable alternative locations for the project; (2) inadequately considered scaled-down, on-site alternatives to the project; and (3) inadequately discussed adverse impacts relating to the inducement of growth, traffic and pedestrian safety, noise, illumination and glare. In the unpublished portion of this opinion, we conclude only plaintiffs' noise claim has merit.

Plaintiffs also assert that Redding's approval of the sports complex was improper because the project is inconsistent with the county's general plan. We reject this contention in the published portion of our opinion. As we shall explain, a city is exempt from compliance with its county's general plan.

### FACTS AND PROCEDURAL BACKGROUND

The project site is located west of Interstate 5 and adjacent to the Sacramento River in the Churn Creek Bottom, an unincorporated rural residential/light agricultural area between the cities of Redding and Anderson. On the county general plan, the site is designated for light agricultural use at a density of one dwelling unit per five or more acres. Within the vicinity, the plan permits other land uses such as commercial, industrial and riparian protection.

Access to the project site is via the Knighten Road freeway interchange and Riverland Drive, a two-lane, county-maintained road with a narrow

shoulder and no curbs or sidewalks. Four residences are located within a few hundred feet of the project. At the south end of Riverland Drive are approximately 300 mobilehomes and a recreational vehicle park containing 160 spaces.

In September 1986, the Redding planning department conducted a site selection study which summarized various aspects of the project. Regarding alternative sites for the project, the study stated: "Eight sites have been identified as potential softball complex or sports complex locations. With one exception, only sites owned by the City of Redding were considered. The exception is Site No. 8 (Highway 44 west of Old Oregon Trail). It is not intended that the eight sites identified represent an exhaustive survey of available options or combinations of alternatives that could also meet the objectives identified earlier. . . ."

The site selection study described the sites and rated them according to various criteria. Overall, the chosen site ranked second. On environmental impacts, the chosen site was rated "fair," the lowest rating given to any site.

In May 1988, the site selection study was incorporated by reference into Redding's draft EIR. In September 1988, the Shasta County planning department found the project was inconsistent with the county's general plan. In October 1988, the Shasta County Board of Supervisors confirmed that finding. In September 1989, Redding's planning commission certified the final EIR as adequate without further discussion of alternative sites. In October 1989, Redding's city council reviewed the final EIR, adopted a statement of overriding considerations and findings, and adopted a statement of conditions of development.

In November 1989, plaintiffs filed this action which was tried on the theory that Redding's approval of the project was invalid for three reasons: the project was inconsistent with Redding's general plan, which was itself obsolete and did not comply with governing law; the final EIR did not comply with CEQA; and the project was inconsistent with the county's general plan. The trial court ruled that Redding's general plan did not comply with Government Code section 65300 et seq., that Redding's approval of the final EIR was consistent with CEQA and supported by substantial evidence, and that Redding was exempt from compliance with the county's general plan.[1] The court issued a writ of mandate directing Redding to vacate its approval of the project "until [it has] brought [its] General Plan into compliance with controlling State law, and until the Project is consistent with the General Plan." This appeal followed.

---

[1]Redding has not appealed from the adverse portion of the judgment.

## DISCUSSION

### I, II*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### III

In September 1988, the Shasta County planning department found the project did not conform to the county's general plan. In October 1988, the Shasta County Board of Supervisors confirmed that finding.

■ Plaintiffs contend the county's finding barred approval of the project, citing Government Code section 65402, subdivision (b), which provides in pertinent part: ". . . a city shall not . . . construct or authorize a public building or structure, in . . . unincorporated territory, if . . . the county in which such unincorporated territory is situated has adopted a general plan . . . and such general plan . . . is applicable thereto, until the location, purpose and extent of such . . . public building or structure have been submitted to and reported upon by the planning agency having jurisdiction, as to conformity with said adopted general plan . . . ."[8]

Redding retorts that nothing in this subdivision expressly precludes the construction of projects which are found not to conform with county general plans. By its terms, the statute requires no more than the report which the county provided to the city in this case.

Plaintiffs contend, however, that a prohibition on construction of nonconforming projects must be inferred from section 65402, subdivision (c), which governs local agencies other than cities, counties, or the state and which is similar to subdivision (b) with the exception of its penultimate sentence which provides: "If the planning agency disapproves the location, purpose or extent of such . . . public building or structure, the disapproval may be overruled by the local agency."

Plaintiffs contend the omission from section 65402, subdivision (b) of an "overruling" mechanism similar to subdivision (c) means that, unlike other local agencies, a city has no power to overrule or otherwise disregard a county's adverse determination. We are not persuaded.

The premise of plaintiffs' argument is correct: the Legislature's intent regarding section 65402, subdivision (b) must have been different than its

---

*See footnote, *ante,* page 778.
[8]Statutory references in this part are to the Government Code.

intent regarding section 65402, subdivision (c). ■ " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." ' " (*Peñasquitos, Inc.* v. *Superior Court* (1991) 53 Cal.3d 1180, 1188-1189 [283 Cal.Rptr. 135, 812 P.2d 154].) The difference, however, is not that cities are bound by county general plans, but that they are categorically exempt from such plans and therefore no overruling mechanism is necessary.

■ The Legislature addressed the ability of cities and counties to regulate other local agencies in article 5 of chapter 1 of part 1 of division 2 of title 5 of the Government Code (commencing with § 53090). Section 53090 defines "local agencies" as not including cities or counties. Section 53091 requires local agencies (but not cities or counties) to comply with cities' and counties' building and zoning ordinances.

Although nothing in article 5 expressly exempts cities and counties from each other's building and zoning ordinances, it was held in 40 Ops.Cal.Atty.Gen. 243 (1962) that such exemption is implicit in section 53090 which excludes cities and counties from the definition of "local agencies." (*Id.*, at pp. 245-247.) After considering the legislative history of sections 53090 through 53095, the Attorney General concluded the Legislature intended to "cover the whole field of intergovernmental regulation with respect to building and zoning ordinances" and to "set at rest the broad problem [of] the ability of a city or county to enforce its building and zoning ordinances against any other local governmental unit acting within its boundaries." (*Id.*, at pp. 245-246.)[9]

The Legislature is presumed to have been aware of the Attorney General's opinion when, in 1965, it added section 65402. (Stats. 1965, ch. 1880, § 5, p. 4341; cf. *Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 609 [257 Cal.Rptr. 320, 770 P.2d 732].) Thus, the absence of an "overruling" provision may be attributed to the Legislature's recognition that no such provision was necessary.

Alternatively, if section 65402, subdivision (b), is construed as mandating city compliance with county general plans, it is inconsistent with the intergovernmental immunity established by sections 53090 and 53091. Such

---

[9]Plaintiffs "respectfully submit that neither the code section [§ 53091] nor its legislative history indicate that the legislature intended anything other than to limit the application of the section to local agencies." The Attorney General considered and rejected this very argument. (40 Ops.Cal.Atty.Gen., *supra*, at p. 245.) Plaintiffs provide no authority or argument for a contrary view. The point is deemed to be without foundation. (*Atchley* v. *City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72]; *People* v. *Callegri* (1984) 154 Cal.App.3d 856, 865 [202 Cal.Rptr. 109].)

inconsistency must be resolved in favor of the latter provisions because section 53095 expressly provides: "The provisions of this article [including sections 53090 and 53091] shall prevail over . . . Section 65402 of the Government Code."

In *Akins* v. *County of Sonoma* (1967) 67 Cal.2d 185 [60 Cal.Rptr. 499, 430 P.2d 57], a personal injury action, the Supreme Court relied on the Attorney General's construction of sections 53090 and 53091 to hold that a city building code did not apply to county-owned property within city limits. (67 Cal.2d at p. 194.) Plaintiffs note *Akins* had no occasion to consider whether cities or counties are exempt from the others' general plans. Even if *Akins* is mere dictum, however, we find no persuasive reason to disregard its reasoning. ■ Dicta of the Supreme Court should not be disregarded by an intermediate appellate court without a compelling reason. (*Mendoza* v. *Easton Gas Co.* (1988) 197 Cal.App.3d 781, 788 [243 Cal.Rptr. 136]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 785, p. 756.) ■ We therefore conclude that sections 53090 and 53091 recognize an intergovernmental immunity from building and zoning regulations, including compliance with county general plans.[10]

Plaintiffs respond that neither *Akins* nor the Attorney General's opinion is controlling because both were decided prior to 1971 when the Legislature mandated the enactment of general plans and established them as "constitutions" for future developments within cities and counties. (*Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 570 [276 Cal.Rptr. 410, 801 P.2d 1161].) We agree that general plans have taken on far greater importance in recent years. (See *ibid*.) Nevertheless, nothing in the code sections relied on by plaintiffs (§§ 65300, 65860, 66473.5) suggests that the Legislature intended to revisit the issue of intergovernmental immunity as theretofore recognized by the Attorney General and the Supreme Court. We conclude any inconsistency between the project and the county general plan did not vitiate Redding's approval of the project.

DISPOSITION

As to noise impacts only, the judgment is reversed. The trial court is directed to modify its peremptory writ of mandate to command defendant to

---

[10]If, as *Akins* and 40 Ops.Cal.Atty.Gen. 243 have held, the Legislature intended to exempt cities and counties from each other's building and zoning regulations, we note such intent produces consequences which perhaps are unintended. Here, the consequence is the inability of affected area voters to vote for or against the persons responsible for the project. Area residents are entitled to vote for county officials, who are powerless to stop the project, but are not entitled to vote for city officials, who alone have the power to abandon the project or revise it to the residents' liking.

vacate its approval of the Riverland Recreation Area project until it has adopted measures sufficient to mitigate the noise impacts disclosed in the final EIR, or until it has adopted a statement of overriding considerations justifying those impacts. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

Sparks, Acting P. J., and Raye, J., concurred.