[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 341 
OPINION
This case comes before us upon transfer from the Appellate Division of the Nevada County Superior Court. (Cal. Rules of Court, rule 8.1000 et seq.) The appellate division affirmed the trial court's order dismissing a complaint accusing defendant Dale Traylor of misdemeanor vehicular manslaughter. (Pen. Code, § 192, subd. (c)(2); further undesignated statutory references are to the Penal Code.) The trial court determined that the charge had previously been dismissed, as a felony, pursuant to section 871, and thus was barred by section 1387 as construed in Burnsv. Superior Court (2005) 34 Cal.4th 1012 [22 Cal.Rptr.3d 876,103 P.3d 276] (hereafter Burris). We certified two issues for transfer. *Page 342 
 The dispositive issue concerns the dismissal of a felony charge and the refiling of a misdemeanor charge for the same offense. The Supreme Court has construed section 1387 to provide that "[m]isdemeanor prosecutions are subject to a one-dismissal rule; one previous dismissal of a charge for the same offense will bar a new misdemeanor charge." (Burris, supra, 34 Cal.4th at p. 1019.) "Thus, either a misdemeanor or a felony dismissal will bar a subsequent misdemeanor charge," whether the previous dismissal was of a felony or a misdemeanor charge. (Id. at p. 1020.)
 Because neither issue reveals error by the courts that have considered this case, we affirm.
 FACTUAL AND PROCEDURAL BACKGROUND From 1977 through April 2004, Larry Lason lived on Creek View Drive in Grass Valley. Lason's nine-year-old son, Tyler, had several motorcycles. He had been riding motorcycles since he was about six years old and had ridden many times on Creek View Drive.
 On an afternoon in April 2004, Tyler left his home and rode his motorcycle westbound on Creek View Drive. He was wearing a motorcycle helmet. The weather was clear and cool, and the pavement was dry and in good condition.
 In the vicinity of the accident, Creek View Drive is narrow, winding and undulating, and the paved portion is about 14 feet wide. Less than one-quarter mile from his home, Tyler's motorcycle was struck by a 1993 Chevrolet Blazer that defendant was driving eastbound. Tyler died very soon after the collision.
 The impact occurred near the top of a grade. A driver in either direction would not see a vehicle coming from the other direction until the driver was close to the top of the crest. Defendant told an investigating officer that he had been traveling at about 15 miles per hour immediately prior to the impact.
 Two skid marks led to the resting place of the Blazer. One skid mark was 24 feet long and the other was 26.5 feet long. Following the collision, two brake tests were performed at the California Highway Patrol office. Full brake applications while the Blazer was being driven at 20 miles per hour produced skid marks of 16 feet four inches, and 17 feet 11 inches. Nothing in the record suggests the Blazer was descending the crown of a hill at the time of these tests.
 At its point of rest following the accident, the Blazer was entirely to the left of the middle of the road. When asked, defendant had no explanation for why he was driving on the wrong side of the road. *Page 343 
 The investigating officer had extensive training and experience in the investigation of traffic collisions. He opined that the collision was caused by the Blazer being driven on the wrong side of the road. The Blazer's speed was not a contributing cause.
 The collision occurred between 5:00 and 5:30 p.m., and the officer arrived on the scene at 5:53 p.m. He noticed a faint odor of alcoholic beverage on defendant's breath. Defendant told the officer that he had consumed one light beer about 4:45 p.m.
 The officer gave defendant "a couple of balance and coordination type field sobriety tests," which defendant completed as demonstrated. The officer also gave defendant two preliminary alcohol screening tests, which measured 0.054 percent and 0.053 percent. The officer formed the opinion that defendant was not over the 0.08 percent level at the time he was driving.
 In July 2004, a complaint was filed accusing defendant of felony vehicular manslaughter. (Case No. F04-335; §§ 192, subd. (c)(1), 193, subd. (c)(1).) Following a preliminary hearing, the magistrate (Judge Tamietti) found that there was insufficient evidence of the felony offense, which requires driving with gross negligence; but there was sufficient evidence of misdemeanor vehicular manslaughter, which requires driving with ordinary negligence and "without gross negligence." (§ 192, subd. (c)(2); see In re Dennis B. (1976) 18 Cal.3d 687, 696 [135 Cal.Rptr. 82, 557 P.2d 514].)
 In his statement of decision, the magistrate found:
 (1) Speed: Based on testimony of longtime residents of the area, defendant's speed was within the reasonable range for prudent drivers. The investigating officer testified that speed was not a cause of the collision. Thus, defendant's speed did not raise a strong suspicion of negligence, either gross or ordinary.
 (2) Alcohol: No evidence was presented of the potential for impairment at the 0.054 percent BAC (blood-alcohol content) level shown by the evidence. There was no testimony from the investigating officer that the alcohol in defendant's system contributed to the collision. "In the absence of such evidence, the court is not permitted to impose a supposition that alcohol may have contributed to or caused the collision. Therefore, the court must conclude that the evidence presented about alcohol does not create a strong suspicion of negligence, either gross or ordinary, on the part of the defendant."
 (3) ABS Brakes: A dash warning light indicated the ABS (antilock brake system) was inoperable. However, a California Highway Patrol technician *Page 344 
determined the inoperable system did not alter appreciably the vehicle's stopping capability. Thus, the condition of the ABS did not create a strong suspicion of negligence, either gross or ordinary.
 (4) Left Side of Road: The accident scene is the crown of a hill where opposing traffic cannot see each other until the last moment. From defendant's direction of travel, an optical illusion creates an impression that a tree is in the center of the road surface. A longtime resident testified that most people driving that road favor the left side of the road when approaching from that direction, in part because of the optical illusion.
 Based upon these findings, the magistrate concluded that the court "has before it evidence that creates a strong suspicion of negligence in driving on the left side of the road approaching a crown that obscures oncoming traffic. However, the testimony of [longtime residents] indicate that any such negligence is neither aggravated, nor reckless. Instead, it is apparently customary for those persons who frequent this particular private road. Therefore, the court concludes that it has before it only evidence to support a suspicion of ordinary, not gross negligence."
 The magistrate (Judge Tamietti) ordered the prosecutor to file an amended complaint charging defendant with the misdemeanor offense and continued the matter to January 2005 for defendant to enter a plea to that charge. When no amended complaint was filed, the magistrate (Judge Darlington) dismissed the case pursuant to section 871.[1]
 Following the dismissal, the People consulted with the California Highway Patrol Multidisciplinary Accident Investigation Team (CHP) regarding whether the matter was more appropriately pursued as a case of gross negligence vehicular manslaughter or as a case of ordinary negligence *Page 345 
vehicular manslaughter. In April 2005, CHP advised that the case was more appropriately pursued as the latter.
 Thus in May 2005, the present complaint was filed charging defendant with a misdemeanor violation of section 192, subdivision (c)(2). (Case No. M05-569.)
 In October 2005, defendant filed a motion to dismiss the present case based upon section 1387 and Burris, supra, 34 Cal.4th 1012. Following a hearing, the trial court (Judge Tamietti) granted the motion.[2] The People appealed to the Appellate Department of the Nevada County Superior Court, which unanimously affirmed.
 In granting the People's petition for transfer, we certified two issues: "1. The application, if any, of `a misdemeanor charged together with a felony' as used in Penal Code section 1387," and "2. The application of the reasoning of [Burris] to these facts."
 DISCUSSION We begin with the second issue certified in our order for transfer. For reasons we shall explain, the first issue requires only brief consideration.
 The appeal turns upon the provisions of section 1387, subdivision (a). It provides in relevant part: "An order terminating an action pursuant to . . . Section . . . 871 . . . is a bar to any other prosecution for the same offense if it is a felony or if it is a misdemeanor charged together with a felony and the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995, or if it is a misdemeanor not charged together with a felony, except in those felony cases, or those cases where a misdemeanor is charged with a felony, where subsequent to the dismissal of the felony or misdemeanor the judge or magistrate finds any of the following: [¶] [circumstances not relevant here]. . . ."
 Section 1387 was recently construed in Burris, supra, 34 Cal.4th 1012. The defendant was first charged with misdemeanor driving under the influence of *Page 346 
alcohol (DUI) with two prior convictions; when the prosecutor discovered a third DUI prior, he dismissed the misdemeanor complaint and filed a felony complaint. (Id. at pp. 1015-1016.) Burris' motion to dismiss the felony complaint was denied, the Court of Appeal denied his petition for writ of mandate, and the Supreme Court affirmed the Court of Appeal. (Id. at pp. 1016, 1024.)
 Burris considered the converse of the present issue: whether dismissal of a misdemeanor complaint bars a new felony charge, not whether dismissal of a felony complaint bars a new misdemeanor charge.
 Burris found that the parties' competing "grammatical arguments" as to the meaning of section 1387 were not "dispositive." (Burris, supra,34 Cal.4th at p. 1017.) Burris then turned to the "human problems the Legislature sought to address in adopting section 1387 — `"the ostensible objects to be achieved [and] the evils to be remedied."' [Citation.]" (Id. at p. 1018.)
 Burris explained: "Section 1387 implements a series of related public policies. It curtails prosecutorial harassment by placing limits on the number of times charges may be refiled. [Citations.] The statute also reduces the possibility that prosecutors might use the power to dismiss and refile to forum shop. [Citations.] Finally, the statute prevents the evasion of speedy trial rights through the repeated dismissal and refiling of the same charges. [Citations.]" (Burris, supra,34 Cal.4th at p. 1018.)
 Burris continued: "The statute's differential treatment of misdemeanors and felonies reflects a different set of public policies. On the one hand, society has an interest in the expeditious resolution of lesser charges. Section 1387 reflects a judgment that scarce prosecutorial resources should not be expended in multiple attempts to punish misdemeanor conduct and mere misdemeanants should not be subjected to serial prosecutions. [Citations.] [¶] On the other hand, there is a heightened societal interest in the prosecution of more serious crimes. Compared to a misdemeanor violation, `[i]f the offense is potentially a felony, society has a much greater interest in its punishment. . . .' [Citation.] As we once colorfully explained, the Legislature's differential treatment of misdemeanors and felonies in section 1387 is justified by the fact that felonies include crimes `so heinous in character that to [their] frequent and unchecked commission might be attributed the origin of a possible statewide disaster, or eventually, the downfall of organized society,' while many misdemeanors `may be insignificant as far as [their] effect upon the body politic is concerned.' [Citations.] Indeed, until 1975, the interest in prosecuting felonies was considered so much greater that, while a one-dismissal rule applied to misdemeanors, felony charges could be refiled ad infinitum. [Citations.]" (Burris, supra, 34 Cal.4th at pp. 1018-1019.) *Page 347 
Burris next explained: "Section 1387 reflects a legislative judgment that because of the heightened threat to society posed by serious crimes, more filings should be permitted for serious crimes than for minor ones. In turn, the best measure of the seriousness of a crime — and the corresponding societal interest in its prosecution and punishment — is not how the crime was originally charged, based on possibly limited evidence, but how the prosecution currently seeks to charge it, based on the most current and best available evidence. It follows that, for purposes of categorizing a crime as subject to a one-dismissal or two-dismissal rule, what matters is the current charge, not the one previously dismissed. The interpretation of section 1387 that most closely comports with these underlying legislative goals is this: Misdemeanor prosecutions are subject to a one-dismissal rule; one previous dismissal of a charge for the same offense will bar a new misdemeanor charge. Felony prosecutions, in contrast, are subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge." (Burris, supra, 34 Cal.4th at p. 1019, fn. omitted.)
 Burris summarized its conclusion: "We note that because what matters is the nature of the current charge, the nature of any prior charges is immaterial to application of these dismissal rules. Thus, either a misdemeanor or a felony dismissal will bar a subsequent misdemeanor charge, while either two felony dismissals or one misdemeanor and one felony dismissal will bar a subsequent felony charge." (Burris, supra,34 Cal.4th at p. 1020, fn. omitted.)[3]
 The People contend that Burris's "one-dismissal rule" for misdemeanors is dictum because the charge there at issue was a felony. But Burris's
formulation of the "one-dismissal" and "two-dismissal" rules was the court's response to Burris's argument that one prior dismissal of a misdemeanor bars a subsequent felony. (Burris, supra,34 Cal.4th at p. 1017.) Thus, the one and two-dismissal rules are the ratio decidendi, or "principle or rule that constitutes the ground of the decision." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, p. 986.) Alternatively, assuming the rules are dicta, we have observed that "[d]icta of the Supreme Court should not be disregarded *Page 348 
by an intermediate appellate court without a compelling reason." (Lawlerv. City of Redding (1992) 7 Cal.App.4th 778, 784 [9 Cal.Rptr.2d 392].) No such reason appears.[4]
 The next question is whether the present misdemeanor was previously dismissed. We conclude it was.
 Burris explained that "[w]hen two crimes have the same elements, they are the same offense for purposes of Penal Code section 1387." (Burris,supra, 34 Cal.4th at pp. 1016-1017, fn. 3.) Burris's only cited authority is Dunn v. Superior Court (1984) 159 Cal.App.3d 1110, 1118 [206 Cal.Rptr. 242] (hereafter Dunn), which, according to Burris, applied the "same elements test to determine whether new charge is same offense as previously dismissed one for purposes of § 1387." (Burris, supra, at p. 1017, fn. 3.)
 Dunn explained that "[k]idnaping for the purpose of robbery cannot be committed without committing the lesser offense of kidnaping. Two dismissals of kidnaping should bar a prosecution for kidnaping for the purpose of committing robbery on the theory that to charge the greaterwould be also to charge the lesser an additional and prohibited thirdtime, [¶] So too with the offenses of auto theft and robbery. Although every robbery does not include an auto theft, the concept of necessarily included offenses permits reference to the facts in the accusatory pleading. (People v. Marshall (1957) 48 Cal.2d 394, 398 [309 P.2d 456].) Thus, in Marshall auto theft was held to be a necessarily included offense in robbery where the property taken in the robbery was alleged in the information to be the automobile involved in the auto theft." (Dunn,supra, 159 Cal.App.3d at p. 1118, italics added.) Dunn thus stands for the proposition that for purposes of section 1387, the "same elements" may be located not only in successive charges of the same offense but also in successive charges of greater and lesser included offenses.
 Dunn cited Wallace v. Municipal Court (1983) 140 Cal.App.3d 100 [189 Cal.Rptr. 886] for the proposition that, "`when the essence of the *Page 349 
offense charged in a second action is the same as the essence of the offense in a previously dismissed action the second action will be barred.'" (Dunn, supra, 159 Cal.App.3d at p. 1118, italics added.) The People criticize this "same essence" test as impermissibly vague. It suffices for present purposes to confine Dunn to the "same elements test" approved in Burris. (Burris, supra, 34 Cal.4th at p. 1017, fn. 3.)
 "[V]ehicular manslaughter without gross negligence" is "a lesser included offense of vehicular manslaughter with gross negligence." (People v. Piceno (1987) 195 Cal.App.3d 1353, 1355 [241 Cal.Rptr. 391].) Thus, the dismissed charge of felony vehicular manslaughter with gross negligence (case No. F04-335) accused defendant of all the elements (plus gross negligence) that he was later accused of in the new charge of misdemeanor vehicular manslaughter (case No. M05-569). The previous charge of the greater was also a previous charge of the lesser; to again charge the lesser is to do so "an additional and prohibited [second] time." (Dunn, supra, 159 Cal.App.3d at p. 1118.)[5]
Burris's application to this case is straightforward. Because "[m]isdemeanor prosecutions are subject to a one-dismissal rule," under which "one previous dismissal of a charge for the same offense will bar a new misdemeanor charge," the prior dismissal of case No. F04-335 now bars the misdemeanor charge in case No. M05-569. (Burris, supra,34 Cal.4th at p. 1019.)
 The People contend that allowing them to refile the misdemeanor charge would "serve the policy of curtailing prosecutorial harassment," because "the People could have refiled the original charge of section 192(c)(1), but chose not to do so." The contention fails because its premise is incorrect.
 Following the referral to CHP and its determination that the case was more appropriately pursued as a misdemeanor, the prosecution could not have refiled the now inconsistent felony charge in good faith without some reasonable basis for rejecting CHP's assessment. (Cf. In reSakarias (2005) 35 Cal.4th 140, 159-160 [25 Cal.Rptr.3d 265,106 P.3d 931].) The People do not suggest any such basis, and none appears. *Page 350 
 DISPOSITION The judgment is affirmed.
 Raye, J., and Cantil-Sakauye, J., concurred.
[1] Section 871 provides: "If, after hearing the proofs, it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate shall order the complaint dismissed and the defendant to be discharged, by an indorsement on the depositions and statement, signed by the magistrate, to the following effect: `There being no sufficient cause to believe the within named A. B. guilty of the offense within mentioned, I order that the complaint be dismissed and that he or she shall be discharged.'"
 Judge Tamietti's order may be considered a dismissal pursuant to section 871. "Where the order precludes the prosecutor from proceeding to trial on the felony offense? originally charged, it must be construed as a dismissal within the meaning of section 871. . . . [T]he effect of the magistrate's order . . . was to preclude the prosecution of defendant on [a] felony charge? because the evidence of the felon[y] was insufficient. We are satisfied that this order constitutes a dismissal within the meaning of section 871." (People v. Superior Court(Feinstein) (1994) 29 Cal.App.4th 323, 332 [34 Cal.Rptr.2d 503].) The prosecution conceded that the effect of Judge Tamietti's order was a dismissal. In any event, Judge Darlington's order was an explicit dismissal pursuant to section 871.
[2] At the hearing and in his written ruling granting the dismissal, Judge Tamietti asserted that he had previously erred in ordering the prosecutor to file an amended complaint. Instead, he reasoned, he (as magistrate) should have reduced the felony charge (a "wobbler") to a misdemeanor pursuant to section 17, subdivision (b)(5).
 However, a section 17, subdivision (b)(5) reduction would not have relieved the prosecution of its burden to prove all the elements of the section 192, subdivision (c)(1) offense, including gross, rather than ordinary, negligence. (People v. Superior Court (Feinstein), supra,29 Cal.App.4th at p. 329 [§ 17 confers no power to reduce a charge to adifferent crime].) A section 17, subdivision (b)(5) reduction would not have adequately addressed Judge Tamietti's finding of insufficient evidence of gross negligence.
[3] The present case illustrates the wisdom of Burris's observation that "the best measure of the seriousness of a crime" is "not how the crime was originally charged, based on possibly limited evidence, but how the prosecution currently seeks to charge it, based on the most current and best available evidence." (Burris, supra, 34 Cal.4th at p. 1019.) Following dismissal of the felony complaint (§ 192, subd. (c)(1)), the prosecution consulted with the CHP, which advised that the matter was more appropriately pursued as a case involving ordinary negligence, which is to say, a misdemeanor (§ 192, subd. (c)(2)). Thus, the "most current and best available evidence" compels the conclusion that this case is a misdemeanor, notwithstanding its prior filing as a felony. (34 Cal.4th at p. 1019.)
[4] The felony complaint in case No. F04-335, and the misdemeanor complaint in case No. M05-569, each charged a single count of violation of a single statutory provision. Thus, neither case involved "a misdemeanor charged together with a felony," within the meaning of section 1387. Our certification of an issue with respect to that phrase appears on reflection to have been improvident.
 In any event, the evident purpose for treating "a misdemeanor charged together with a felony" the same as "a felony" is suggested by Burris's
comment that section 1387 "curtails prosecutorial harassment by placing limits on the number of times charges may be refiled." (Burris, supra,34 Cal.4th at p. 1018.) The addition of a misdemeanor charge does not inconvenience or "harass" a defendant who is properly in court on a felony charge to the same extent that the misdemeanor charge would inconvenience a defendant who would otherwise be out of court.
[5] We thus reject the People's argument that "the misdemeanor charge dismissed by the trial court was not a charge which had ever been previously dismissed, and therefore, this charge is not a charge which is described in the second portion of section 1387(a), which sets forth a one dismissal rule barring further prosecution for the same misdemeanor offense which has been previously dismissed." *Page 351