[No. C018187. Third Dist. Feb. 16, 1996.]

In re JOSEPH B., a Person Coming Under the Juvenile Court Law.
SAN JOAQUIN COUNTY DEPARTMENT OF HUMAN SERVICES,
Plaintiff and Appellant, v.
ALZATA C. et al., Defendants and Respondents;
JOSEPH B., Appellant.

## COUNSEL

John F. Cheadle, County Counsel, Patrick H. Curran and Carol Dahle Stiles, Deputy County Counsel, for Plaintiff and Appellant.

Aggie Rose-Chavez, under appointment by the Court of Appeal, for Appellant.

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendants and Respondents.

## OPINION

**SCOTLAND, J.**—The juvenile court found that Joseph B. (the minor) came within the provisions of Welfare and Institutions Code section 300, subdivisions (a) and (b), due to physical abuse by his mother, Alzata C. (Alzata), and father. (Further section references are to the Welfare and Institutions Code unless otherwise specified.) The minor was declared a dependent child of the court and was placed with his paternal grandmother.

Section 366.21, subdivisions (e) and (f), and section 366.22, subdivision (a), provide that, at periodic review hearings, the juvenile court "shall order the return of the minor to the physical custody of his or her parent or guardian unless, by a preponderance of the evidence, it finds that return of the child would create a substantial risk of detriment to the physical or emotional well-being of the minor."

At the 18-month review hearing, the court found that, although returning the minor to his parents would pose no risk of harm to the minor's physical well-being, it would cause a substantial risk of detriment to his emotional well-being because the minor's "mental health . . . is at grave risk" if he is

returned home. Nevertheless, the court ruled that "such detriment is no bar to return, as the dependency was not established under [section 300, subdivision (c)]," which applies where the minor is suffering, or is at substantial risk of suffering, serious emotional damage. Explaining it did "not believe that the law provides that you can take [a minor] out of home for one reason"—the risk of physical harm—"and keep [the minor] out of home for another [reason]"—the risk of emotional harm—the court ordered the dependency dismissed, requiring the minor to be returned to his parents' custody.

The Department of Human Services (the Department) and the minor appeal, contending the juvenile court violated section 366.22, subdivision (a), by returning the minor to his parents notwithstanding the court's finding that doing so poses a grave risk of detriment to the emotional well-being of the minor.

We agree and reverse the order of dismissal. As we shall explain, the question whether to return a dependent child to parental custody is not governed solely by whether the parent has corrected the problem which required court intervention; rather, the court must consider the effect such return would have on the child. If returning the child will create a substantial risk of detriment to his or her physical or emotional well-being (§§ 366.21, subds. (e) & (f), 366.22, subd. (a)), placement must continue regardless of whether the detriment mirrors the harm which had required the child's removal from parental custody (§§ 300, subds. (a)-(j), 361, subd. (b)).

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1984, a dependency petition was filed alleging the minor was disciplined inappropriately by Alzata, who had hit him with a belt, leaving bruises on his arm, back and buttocks. (§ 300, subd. (a).) Alzata pled no contest to this allegation, and the minor was placed with his paternal grandmother. Alzata received a reunification plan that included counseling and parenting classes focusing on alternative methods of discipline. The minor's father also was required to participate in parenting classes and other services.

Following the parents' completion of their reunification plans, the juvenile court found the conditions which required court intervention no longer existed, and dismissed the dependency.

In August 1992, a new dependency petition was filed. As amended, the petition alleged the minor and his siblings were spanked by Alzata, who used a belt and tennis racket on the siblings, leaving marks on their buttocks and legs. (§ 300, subds. (a), (b).) The petition further alleged Alzata periodically

spanked the minors with belts; she has a history of physical abuse of her children; and the minor's father has a history of spousal abuse and abuse of the minor. The minor was detained and placed with his paternal grandmother.

Alzata and the minor's father pled no contest to the amended petition. The minor was declared a dependent child of the court and again was placed with his grandmother. Alzata and the minor's father received reunification plans that required them to complete parenting classes, visit the minor regularly, develop and maintain a positive parental relationship with the minor, and participate in and cooperate with therapy for the minor.

The social worker's report prepared for the 18-month review hearing indicates the minor was in good health and progressing satisfactorily at school. Due to his physical abuse by Alzata, the minor harbored significant resentment toward her. He had not entered therapy, however, due to financial constraints and his refusal to attend counseling. The minor had adjusted well in his grandmother's home and had worked during the summer. The social worker opined: "To remove [the minor] from [his grandmother's] home would frustrate his growing sense of independence and self-worth, injure his sense of security, and would eventually result in increased anger toward his mother and father. To remove [the minor] would prove detrimental." Alzata and the minor's father wanted the minor returned to their care. The social worker recommended a hearing pursuant to section 366.26 to determine whether the minor's grandmother should become his guardian.

A contested review and section 366.26 hearing was set. The minor's father also filed a motion for modification pursuant to section 388, alleging he had completed all the reunification requirements except family therapy, which he was unable to do because the minor had never been placed in individual counseling, a precondition of family therapy. The father asked that the order requiring family therapy be vacated, the minor be returned to parental custody, and the dependency be dismissed. In response, the social worker filed a declaration stating she had arranged counseling for the minor, using Alzata's health insurance, but that Alzata inexplicably had canceled that coverage. The social worker also had offered to place the minor in foster care in San Joaquin County, where counseling services could be provided, but the parents refused any out-of-home placement other than with the grandmother.

At the consolidated hearing, Alzata stipulated that she had not completed family counseling, and made an offer of proof that she would participate in family counseling "if and when the children are returned to her custody."

The minor's father made an offer of proof that he would ensure family therapy was initiated if the minor were returned home. The minor made an offer of proof that he did not want to return to his parents' home and would not feel safe if he had to live with Alzata. The social worker opined that returning the minor to parental custody would be detrimental to his emotional well-being. Noting the minor had said "with some force" that he did not want to return to Alzata's custody, the social worker testified "there would be some very real chance" the minor would be at risk physically or emotionally if he were returned home. The social worker believed, however, that the minor probably "would run away, run to his grandmother, do something, before pressure got to the point that he would be hit."

The court ruled: "Well, I'll make some special findings and then you can create case law on it. I'd be happy to be overruled on this, I tell [you] the truth. I would like to be able to say that for the sake of [the minor's] mental health, which I find is at grave risk to be returned home, because to avoid the conflict between himself and his mother, whom it appears has problem[s] facing and dealing with this—she is, but she's always just a step behind where somebody who was truly committed to fixing the problem will be. [¶] So that [the minor] is going to—in the words of the social worker, is going to run away and avoid the problem rather than trying to resolve the problem. He'll take the responsibility on himself to fix himself. [¶] This—this child is going to have problems all through life, and mom won't—I find that mom won't take him to counseling once he comes home, I've heard too many promises, I've made too many orders. The pattern of what I see here and mom trying to get counseling . . . is she won't do it, okay? [¶] So basically [the minor is] at risk emotionally to be returned home, but I do not believe that the law provides that you can take [a child] out of home for one reason, and keep [him] out of home for another. [¶] So the matter of [the minor] is dismissed."

## DISCUSSION

Based upon severe spankings administered by his mother, the minor was adjudged a dependent child of the juvenile court pursuant to section 300, subdivisions (a) and (b). As pertinent to the facts of this case, these subdivisions apply when "[t]he minor has suffered, or there is a substantial risk that the minor will suffer, *serious physical harm* inflicted nonaccidentally upon the minor by the minor's parent" (§ 300, subd. (a)) and when "[t]he minor has suffered, or there is a substantial risk that the minor will suffer, *serious physical harm or illness*, as a result of the failure or inability of his . . . parent . . . to adequately supervise or protect the minor" (§ 300, subd.

(b)). (Stats. 1991, ch. 1203, § 1.5, italics added,[1] amended Stats. 1992, ch. 382, § 1.)

The minor was *not* adjudged a dependent child pursuant to section 300, subdivision (c), which applies when "[t]he minor is suffering *serious emotional damage*, or is at substantial risk of suffering *serious emotional damage*, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent . . . ." (Stats. 1991, ch. 1203, § 1.5, italics added, amended Stats. 1992, ch. 382, § 1.)

Because the minor was removed from his parents' custody pursuant to section 361, subdivision (b), the juvenile court was required by section 366, subdivision (a), to review the minor's status periodically, no less frequently than once every six months. (Stats. 1989, ch. 913, § 12, pp. 3154-3155 amended Stats. 1994, ch. 663, § 2.)

At the review hearings, the juvenile court was required by section 366.21, subdivision (e) (six-month review), section 366.21, subdivision (f) (12-month review), and section 366.22, subdivision (a) (18-month review), to order the return of the minor to the physical custody of his parents "unless, by a preponderance of the evidence, it finds that the return of the child would create a substantial risk of *detriment to the physical or emotional well-being* of the minor." (Stats. 1989, ch. 913, § 13, p. 3156, italics added, amended Stats. 1995, ch. 540, § 2; Stats. 1991, ch. 820, § 4, italics added, amended Stats. 1995, ch. 540, § 4.)

Following the 18-month review hearing, the juvenile court concluded the Department had shown the degree of detriment to the emotional well-being of the minor required by section 366.22, subdivision (a), to preclude returning him to his parents' custody. Nevertheless, the court refused to continue the minor in out-of-home placement because his dependency had not been established pursuant to section 300, subdivision (c), i.e., juvenile court jurisdiction was not based upon a showing that the minor had been at risk of serious emotional damage. As the court explained, it believed the statutory scheme does not permit removal of a child from parental custody for one reason (here, the risk of physical harm) and allow retention of the child in out-of-home placement for another reason (here, the risk of emotional harm). Because the basis for juvenile court intervention (a substantial risk of detriment to the physical well-being of the minor) no longer existed, the

---

[1]Throughout this opinion, we will refer to the applicable statutes as they existed at the time of the juvenile court's order. We also will note any amendments thereafter made to the statutes.

court terminated jurisdiction over the minor, requiring his return to the custody of Alzata and his father.

■ The Department and the minor contend the juvenile court erred when it dismissed the dependency and forced the minor to return to parental custody notwithstanding the court's finding that the minor's "mental health [was] at great risk" if he returned home. We agree.

Construed with reference to section 300 and the entire system of dependency statutes (*In re Michael G.* (1988) 44 Cal.3d 283, 296 [243 Cal.Rptr. 224, 747 P.2d 1152]), the language of sections 366.21 and 366.22 does not state or imply that, in order to keep a minor out of parental custody, the serious risk of detriment posed by returning the minor to his or her parent must involve the same type of harm which formed the basis for the dependency and the removal of the minor from parental custody. In fact, the statutes indicate just the opposite.

Section 300 authorizes juvenile court intervention under a variety of circumstances which pose differing types of detriment to children. When a minor is found to come within any of the circumstances set forth in section 300, the juvenile court may limit the control to be exercised over the child by his or her parent. (§ 361, subd. (a).)

Pursuant to section 361, subdivision (b), the court may remove a minor from parental custody if the court finds by clear and convincing evidence that *any* of five circumstances exist: there is a substantial danger to the physical health of the minor and no reasonable means other than removal from parental custody can protect the minor's physical health (§ 361, subd. (b)(1)); the parent is unwilling to have custody of the minor (§ 361, subd. (b)(2)); the minor is suffering severe emotional damage and no reasonable means other than removal from parental custody can protect the minor's emotional health (§ 361, subd. (b)(3)); the minor has been sexually abused and no reasonable means other than removal from parental custody can protect the minor from the risk of sexual abuse, or the minor does not wish to return to parental custody (§ 361, subd. (b)(4)); *or* the minor has been left without support, the parent has been incarcerated or institutionalized and cannot arrange for the minor's care, or the relative or other adult custodian with whom the child has been left by the parent is unwilling or unable to care for the child and, after reasonable efforts to locate the parent, his or her whereabouts are unknown (§ 361, subd. (b)(5)). (Stats. 1990, ch. 182, § 7, pp. 1307-1308, amended Stats. 1992, ch. 382, § 2 [to include sexual abuse of a sibling under § 361, subd. (b)(4)].)

Nothing in section 361 requires that the circumstance which justifies removal of the minor from parental custody must be akin to the detriment which necessitated juvenile court jurisdiction. For example, where a minor becomes a dependent child of the court because he or she has suffered from the nonaccidental infliction of serious physical harm by a parent (§ 300, subd. (a)) 'and there are reasonable means to protect the minor from further physical harm without removing the minor from his or her parent's custody, the court nonetheless may remove the minor if the parent is unwilling to have physical custody of the minor (§ 361, subd. (b)(2)).

As we have noted, when the juvenile court reviews the status of a minor who has been removed from parental custody, section 366.21, subdivisions (e) and (f), and section 366.22, subdivision (a), require the court to return the minor to the physical custody of the parent unless, by a preponderance of the evidence, the court finds this "would create a substantial risk of detriment to the physical or emotional well-being of the minor."

Like section 361, nothing in sections 366.21 and 366.22 requires that the detriment which justifies continued removal of the minor from parental custody must be akin to the detriment which necessitated juvenile court jurisdiction. To the contrary, the fact these statutes contain a standard— "substantial risk of detriment to the physical or emotional well-being of the minor"—which differs from the standards required by section 300 to establish juvenile court jurisdiction strongly implies the Legislature did not intend to restrict the showing of detriment at a review hearing to the type of harm which necessitated dependency intervention. (Cf. *Peñasquitos, Inc.* v. *Superior Court* (1991) 53 Cal.3d 1180, 1188-1189 [283 Cal.Rptr. 135, 812 P.2d 154].)

By authorizing the continued removal of a child from parental custody based on the risk of either physical detriment or emotional detriment, sections 366.21 and 366.22 focus on the child's well-being at the time of the review hearing rather than on the initial basis for juvenile court intervention. (Cf. *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 [24 Cal.Rptr.2d 751, 862 P.2d 751].) Thus, while the court must consider the extent the parent has cooperated with the services provided and the efforts the parent has made to correct the problems which gave rise to the dependency (§ 366.22, subd. (a)), the decision whether to return the child to parental custody depends on the effect that action would have on the physical or emotional well-being of the child. (*Ibid.*)

For example, where a child who has been abused physically is experiencing severe emotional trauma as a result of the abuse and from a fear of being returned to parental custody, it would be inconsistent with the well-being of the child to compel his or her return to parental custody even if means are

available to protect the child from further physical abuse by the parent. Rather, the statute contemplates that services be provided to address the child's emotional trauma before returning the child to parental custody.

In construing the statutory scheme to prohibit taking a minor "out of home for one reason, and keep[ing the minor] out of the home for another [reason]," the juvenile court read into the statutes language which does not exist (*Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557] [a court must not insert what has been omitted from a statute]) and interpreted them in a manner inconsistent with their express terms and legislative intent.

█  The purpose of the dependency statutes is to provide for the protection and safety of a minor who comes under the jurisdiction of the juvenile court and, when consistent with the minor's welfare, to preserve the minor's family ties. (§ 202, subd. (a).) "Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

California's dependency statutes fulfill this duty by authorizing juvenile court intervention to protect children who are at substantial risk of suffering physical or emotional harm. While the statutory scheme is designed to assist families to "correct the problems which caused the child to be made a dependent child of the court" (§ 366.1, subd. (d); Stats. 1987, ch. 1485, § 41, p. 5628), its focus remains on the well-being of the child. (§ 202, subd. (a); *In re Jasmon O.* (1994) 8 Cal.4th 398, 421 [33 Cal.Rptr.2d 85, 878 P.2d 1297]; *In re Marilyn H.*, *supra*, at p. 307.)

Consistent with the purpose of the dependency scheme, the question whether to return a child to parental custody is dictated by the well-being of the child at the time of the review hearing; if returning the child will create a substantial risk of detriment to his or her physical or emotional well-being (§§ 366.21, subds. (e) & (f), 366.22, subd. (a)), placement must continue regardless of whether that detriment mirrors the harm which had required the child's removal from parental custody (§§ 300, subds. (a)-(j), 361, subd. (b)).

█  Alzata does not attempt to defend the juvenile court's interpretation of the statutory scheme. Rather, she argues, even if the court wrongly construed the statutes, this is immaterial if the record supports the termination of jurisdiction and return of the minor to her. Alzata claims the record supports the court's order because she completed "all the preconditions to reunification" except family therapy, which she could not complete due to lack of funds and the minor's refusal to participate in counseling. Thus, she

contends, "[t]his left the trial court with no choice but to return [the minor to her]." We disagree.

The fact Alzata satisfied the requirements of the reunification plan does not mean she was entitled to custody of the minor regardless of the substantial risk of detriment that reunification would have on the minor's emotional well-being. As we have explained, while a goal of child welfare services provided to the minor and family (§ 361.5) is to help the parents correct problems that caused the minor to be made a dependent child of the court (§ 366.1, subd. (d)), and thus to permit family reunification, the focus of dependency law is on the well-being of the minor.

Hence, the question whether to return a child to parental custody is not governed solely by whether the parent has corrected the problem that required court intervention; rather, the court must consider the effect such return would have on the child. It defies common sense to conclude that a child who has become severely disturbed emotionally as an outgrowth of physical abuse administered by a parent and who will suffer further emotional trauma if compelled to return to parental custody must nonetheless be returned because the parent's successful completion of reunification services indicates further physical abuse is unlikely. In our view, that result is precisely what the Legislature intended to avoid by enacting section 366.21, subdivisions (e) and (f), and section 366.2, subdivision (a).

■ Nevertheless, Alzata claims we should affirm the dismissal of jurisdiction because the evidence does not support the juvenile court's finding that the minor's return to her custody would create a substantial risk of detriment to the emotional well-being of the minor. Again, we disagree.

In Alzata's view, the minor was distressed at the thought of returning to Alzata's custody not because of "any serious deficit" in her home but simply because he did not want to leave behind his friends who lived near the grandmother's house where the minor was residing. She misinterprets the record. The juvenile court found the minor's mental health was at grave risk due to the "conflict between himself and [Alzata]." Implicit in the court's comments is a finding that the "conflict" is the same one which earlier had led Alzata to inflict physical abuse on the minor. Moreover, it appears the court concluded that Alzata was not truly committed to fixing the problem. The court found Alzata's promises to obtain family counseling for the minor were not credible: "[M]om won't take [the minor] to counseling once he comes home, I've heard too many promises, I've made too many orders. The pattern of what I see here and mom trying to get counseling . . . is she won't do it, okay?" We will not disturb the juvenile court's assessment of Alzata's attitude and credibility.

The finding of emotional detriment is supported by Alzata's history of physical abuse of the minor, the unlikelihood that she will pursue family

counseling, the minor's expression of fear and desire not to return to Alzata's custody, and the social worker's testimony regarding the adverse effect that returning the minor to Alzata would have on his emotional well-being.[2]

Citing *In re Venita L.* (1987) 191 Cal.App.3d 1229 [236 Cal.Rptr. 859] (overruled on other grounds in *In re Jasmon O., supra,* 8 Cal.4th at p. 421), Alzata suggests that, when the risk of detriment found at a review hearing differs from the risk of harm which served as the original basis for dependency, the detriment must be sufficient to sustain a new jurisdictional finding based on that detriment. She argues there was no basis for continued removal in this case because "any discomfort that [the minor] might have felt about leaving his grandmother's care and returning to [Alzata's] care was insufficient to cause dependency in the first place."

*In re Venita L.* is of no assistance to Alzata because it construed a dependency scheme that since has been amended to significantly modify the standards for establishing dependency (compare Stats. 1986, ch. 1122, § 2, p. 3976 with Stats. 1987, ch. 1485, § 4, pp. 5603-5606) and because it is distinguishable on its facts. *In re Venita L.* held that, to continue a minor in placement, the juvenile court must make express findings at review hearings that returning the minor to parental custody would create a substantial risk of detriment to the minor. (191 Cal.App.3d at pp. 1239-1240.) After determining no express finding of detriment had been made in that case, the appellate court went on to say it could not imply such a finding (*id.,* at p. 1239) because it was "unclear from the record whether the [juvenile] court considered substantial risk of detriment when it made its findings and orders." (*Id.,* at p. 1240.) In discussing the record, the justices, in dictum, mused over whether the juvenile court must "ignore claims of new, or at least previously undetected, problems which could affect dependency" in determining if the minor should be returned to parental custody. (*Id.,* at p. 1242.) In answering, "[c]ertainly not," the justices went on to say: "[I]f the original cause(s) necessitating dependency have been substantially alleviated, then the juvenile court, in considering 'new' problems, should determine first whether the so-called new problem is no more than another manifestation of the original basis for dependency. If not, the court should determine whether the new problem would sustain a jurisdictional finding. [¶] To do otherwise disregards the apparent goals of dependency proceedings: to protect those children who come within the provisions of section 300 and, where possible, to assist the parent(s) in alleviating or mitigating the causes of dependency so that out-of-home placement can be terminated. Dependency proceedings

---

[2]In light of our conclusion, we need not consider Alzata's argument that no presumption of detriment arose from her failure to participate in court-ordered treatment. (See § 366.22, subd. (a).)

should not be allowed to drift from major problem-solving circumstances to prolonged attempts to resolve shortcomings in the parental home which would not cause dependency in the first place." (*Ibid.*; see § 342.)

Aside from the fact *In re Venita L.* dealt with an outmoded statutory scheme and thus is of limited precedential value, the juvenile court in this case made an express finding of detriment, and said detriment was a manifestation of the original basis for dependency: the minor's substantial emotional trauma was caused by the physical abuse he received from Alzata and by his fear of further physical abuse if he returned to her custody. Hence, it was not a "new" problem, as was the situation in *In re Venita L.*

For reasons stated above, the juvenile court erred by terminating the dependency notwithstanding its finding that the minor's mental health was "at grave risk" if he was returned to his parents' custody. Because the finding of emotional detriment precluded the minor's return to Alzata (§ 366.2, subd. (a)), the fact Alzata complied with her reunification plan is insufficient to support the juvenile court's order.

DISPOSITION

The order dismissing the dependency is reversed.

Puglia, P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied March 13, 1996, and respondents' petition for review by the Supreme Court was denied May 1, 1996.