[No. B150142. Second Dist., Div. Three. Apr. 30, 2002.]

CATALINA INVESTMENTS, INC., Plaintiff and Appellant, v.
BILL JONES, as Secretary of State, etc., Defendant and Respondent.

2

**COUNSEL**

Dan Glaser for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, Assistant Attorney General, Andrea L. Hoch, Louis Mauro, Christopher C. Foley and Jonathan K. Renner, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Catalina Investments, Inc. (Catalina), appeals a judgment denying its petition for writ of mandate whereby Catalina sought to overturn a decision by defendant and respondent Bill Jones,

Secretary of State of the State of California (the Secretary) rejecting Catalina's attempt to file a certificate of revocation of corporate dissolution.

The essential issue presented is whether the Secretary had a legal duty to accept for filing the purported certificate of revocation of dissolution.

Catalina, as a dissolved corporation, lacked the capacity to seek reinstatement by means of an alleged revocation of dissolution. (Corp. Code, §§ 1905, subd. (c), 2010, subd. (a).)[1] The correction remedy of section 109 does not authorize the retroactive reinstatement of a dissolved corporation. (§ 109, subd. (e).) Further, the proffered certificate of revocation of dissolution did not meet the criteria for the filing of a certificate of correction of instrument because there was no showing of any factual misstatement or other defect in the certificate of dissolution requiring correction. (§ 109, subd. (a).) Accordingly, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On May 8, 1989, Catalina incorporated in the State of California. On August 16, 1989, Catalina registered in Israel as a foreign corporation (Catalina-Israel). It acquired and continues to hold real property there.

In 1993, Nechustan, an Israeli corporation, acquired all of Catalina's stock.

On March 19, 1996, Catalina filed a certificate of dissolution with the Secretary, certifying the corporation has been completely wound up, its assets had been distributed and its liabilities had been paid, the election to dissolve was made by the vote of all the outstanding shares, and the corporation was dissolved.

In July 2000, in the course of an audit of Nechustan, the auditors concluded that if Catalina's dissolution in California were not reversed, Nechustan would incur a liability for real property transfer taxes and fees in Israel of approximately $300,000.

Consequently, on August 2, 2000, Catalina submitted a purported certificate of revocation of dissolution to the Secretary. The certificate of revocation of dissolution stated the certificate of dissolution was filed in error, the corporation in fact had not wound up, had not distributed its assets, and the corporation's board had revoked its election to dissolve.

---

[1] All further statutory references are to the Corporations Code, unless otherwise indicated.

The Secretary returned, unfiled, the certificate of revocation of dissolution, explaining there was no statutory authority for such a filing.

2. *Catalina's petition for writ of mandate.*

On January 4, 2001, Catalina filed a petition for writ of mandate to require the Secretary, subject to the payment of any appropriate fees and taxes, to reinstate Catalina's corporate capacity and to certify Catalina as an active corporation and in good standing.

The supporting declaration of Levi Kushnir (Kushnir), a director of Catalina, stated that in 1996, he was advised by an attorney and tax adviser in Israel as well as by an accountant, there was no longer any need to maintain Catalina as a California corporation because Catalina was registered in Israel (Catalina-Israel) and was not doing business in California or anywhere else outside Israel. Kushnir believed Catalina-Israel had a corporate existence independent of Catalina. Therefore, Kushnir instructed his California public accountants to proceed with the formal dissolution of Catalina under California law, while assuming that Catalina-Israel would continue to exist and operate independently. The certificate of dissolution accordingly was filed with the Secretary on March 19, 1996. However, in July 2000, Kushnir learned his understanding in 1996 was erroneous, and as a result of Catalina's dissolution in California, there would be substantial adverse tax consequences to Catalina's shareholder, Nechustan, and that Catalina's Israeli operations since 1996 were under a cloud of uncertainty.

Kushnir also asserted that no prejudice would result to any third party if the trial court were to grant the petition and order the reinstatement of Catalina's corporate existence.

3. *The Secretary's opposition.*

The Secretary opposed the petition, contending the threshold issue was Catalina's lack of capacity in that, as a dissolved corporation, Catalina was precluded from bringing any legal action other than one in furtherance of winding up its corporate affairs. As for the merits, even assuming the corporation had been dissolved in error, there is no authority for the filing of a purported certificate of revocation of corporate dissolution. In the absence of any provision in the Corporations Code for undoing a corporate dissolution, there can be no legal duty, ministerial or discretionary, on the part of the Secretary to file the purported certificate. Further, neither the Secretary nor the court is in a position to assess the consequence of undoing the dissolution, because there is no way of knowing the extent to which third

parties may have relied upon the public record maintained by the Secretary, which states that the corporation was dissolved on March 19, 1996.

### 4. *Trial court's ruling.*

On March 1, 2001, the matter came on for hearing. The trial court denied the petition, ruling the Secretary's rejection of the proffered certificate was not arbitrary, capricious or contrary to law, and Catalina had failed to establish a legal duty on the Secretary's part to file the certificate.

The trial court noted the parties agreed there was no express law that provides for the filing of such a document or for the reinstatement of a dissolved corporation's corporate status. Section 1902 provides for the revocation of an election to dissolve *before* dissolution has been accomplished vis-à-vis the state. Section 109, subdivision (a), provides for certificates of correction to be filed to correct agreements, certificates or other instruments with respect to misstatements of fact, defects of execution, or any other error or defect, for corporations whose corporate identity and existence are not in doubt.

The trial court further observed that the integrity of public records would be compromised by any attempted "correction" to Catalina's corporate status. The records on file with the Secretary disclose that as of March 19, 1996, Catalina was completely wound up and its known assets distributed to those entitled thereto. However, the certificate of revocation of dissolution states the assets were never distributed. The Secretary should not act where the rights of third parties relying on public records might be affected. Finally, pursuant to section 8615, subdivision (b), Catalina's status as a dissolved corporation means it lacks the legal capacity to bring this or any other legal action except one in furtherance of winding up its affairs.[2]

Catalina filed a timely notice of appeal from the judgment denying its petition for writ of mandate.[3]

### CONTENTIONS

Catalina contends: Catalina had standing to file the petition in the court below; the trial court erred in refusing to apply section 109, authorizing the

---

[2]We note that section 8615 is found within the Nonprofit Corporation Law (§ 5000 et seq.) and thus has no application here because Catalina was not a nonprofit corporation. Nonetheless, the trial court's citation to section 8615 is harmless because its decision denying Catalina's mandate petition is correct in result. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

[3]A judgment denying a petition for writ of mandate is appealable. (Code Civ. Proc., §§ 904.1, subd. (a)(1), 1110; *Kennedy v. South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 666 [137 Cal.Rptr. 396].)

filing of a certificate of correction; the Secretary has a mandatory duty to accept a certificate of correction of the erroneously filed certificate of dissolution; the petition should have been granted even if section 109 is inapplicable; and the trial court abused its discretion in denying the petition.

## DISCUSSION

1. *Requirements for issuance of traditional mandamus relief.*[4]

Code of Civil Procedure section 1085, subdivision (a) provides: "A writ of mandate may be issued by any court, except a municipal court, to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person."

■ For a traditional writ of mandate to issue, there are two basic requirements: a clear, present and usually ministerial duty on the part of the defendant, and a clear, present and beneficial right in the petitioner to the performance of that duty. (*Taylor v. Board of Trustees* (1984) 36 Cal.3d 500, 507 [204 Cal.Rptr. 711, 683 P.2d 710]; *McCabe v. Snyder* (1999) 75 Cal.App.4th 337, 340 [89 Cal.Rptr.2d 315].)

2. *Standard of review.*

■ In reviewing an administrative decision pursuant to Code of Civil Procedure section 1085, courts apply the following standard: Judicial review is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary, capricious, or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give the notices required by law. (*Pomona Police Officers' Assn. v. City of Pomona* (1997) 58 Cal.App.4th 578, 584 [68 Cal.Rptr.2d 205].)
■ Where the pertinent facts are undisputed and the issue is one of statutory interpretation, the question is one of law and we engage in a de novo review of the trial court's determination. (*Ibid.*; *Beverly v. Anderson* (1999) 76 Cal.App.4th 480, 483-484 [90 Cal.Rptr.2d 545].)

---

[4]Code of Civil Procedure section 1085 is regarded as traditional mandamus, as contrasted with Code of Civil Procedure section 1094.5, providing for administrative mandamus. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 566 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

### 3. *Catalina, as a dissolved corporation, lacked capacity to file a purported certificate of revocation of dissolution.*

The threshold issue is Catalina's capacity to seek reinstatement of its corporate existence. Section 1905, within the General Corporation Law (§ 100 et seq.), pertains to corporate dissolution. Section 1905 states in pertinent part at subdivision (c): "The certificate of dissolution shall be filed with the Secretary of State and thereupon the corporate powers, rights, and privileges of the corporation shall cease."

Further, section 2010, relating to the powers of a dissolved corporation, provides in relevant part: "(a) A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, *but not for the purpose of continuing business except so far as necessary for the winding up thereof.* [¶] (b) No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof. [¶] (c) Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly." (Italics added.)

Here, Catalina filed a certificate of dissolution on March 19, 1996. As of that date, Catalina's corporate existence ceased, *except for the limited purpose of further winding up* of its affairs. (§§ 1905, subd. (c), 2010, subd. (a).) As a consequence of Catalina's dissolved status, it lacked the capacity to submit a purported certificate of revocation of dissolution more than four years later, in an attempt to reinstate its corporate existence.

Catalina's reliance on *Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180 [283 Cal.Rptr. 135, 812 P.2d 154] is misplaced. As explained in *Penasquitos*, a "California corporation may dissolve by following the procedure set forth in the Corporations Code. After it has dissolved, a corporation, although no longer permitted to do business as a going concern, continues to exist for purposes of winding up its affairs and, in particular, for discharging obligations and defending lawsuits." (*Id.* at p. 1183.)

The question presented in *Penasquitos* was whether "homeowners may bring suit for construction defects against the corporations that graded the

lots and built the homes, when those corporations had dissolved before the homeowners' discovery of the construction defects." (*Penasquitos, Inc. v. Superior Court, supra,* 53 Cal.3d at p. 1183.) The Supreme Court concluded that "[a]lthough a party may not sue the shareholders of a dissolved corporation on a claim that arose after the dissolution [citations], analysis of the statutory scheme discloses a legislative intent to permit parties to bring suit against dissolved corporations for damages that occur or are discovered after dissolution." (*Ibid.*) *Penasquitos* does not speak to the capacity of a dissolved corporation to seek reinstatement and has no bearing on the issue presented herein.

4.  *Section 109 does not authorize reinstatement of Catalina's dissolved corporation by means of a purported correction of a certificate of dissolution.*

Leaving aside the issue of Catalina's lack of capacity to seek reinstatement, there is also no authority for Catalina's attempt at reinstatement by means of a certificate of correction under section 109.

a.  *No retroactive reinstatement of dissolved corporation.*

Section 109 states in relevant part: "(a) Any agreement, certificate or other instrument relating to a domestic or foreign corporation filed pursuant to this division *may be corrected with respect to any misstatement of fact contained therein, any defect in the execution thereof or any other error or defect contained therein,* by filing a certificate of correction entitled 'Certificate of Correction of _____ (insert here the title of the agreement, certificate or other instrument to be corrected and name(s) of corporation or corporations)'; provided, however, that no such certificate of correction shall alter the wording of any resolution or written consent which was in fact adopted by the board or the shareholders . . . . [¶] . . . [¶] (e) *The filing of the certificate of correction shall not alter the effective time of the agreement, certificate or instrument being corrected, which shall remain as its original effective time,* and such filing shall not affect any right or liability accrued or incurred before such filing, except that any right or liability accrued or incurred by reason of the error or defect being corrected shall be extinguished by such filing if the person having that right has not detrimentally relied on the original instrument." (Italics added.)

Because section 109, subdivision (e) provides the filing of a certificate of correction "*shall not alter the effective time of the agreement, certificate or*

*instrument being corrected, which shall remain as its original effective time"* (italics added), the March 19, 1996 certificate of dissolution, even if erroneously filed, cannot be corrected nunc pro tunc. As the trial court observed, such a limitation on the relief available under section 109 is necessary to protect the integrity of public records, upon which third parties such as creditors, taxing authorities or others, may have relied.

Because the filing of a certificate of correction does not relate back to the date of the instrument being corrected (§ 109, subd. (e)), Catalina cannot obtain a retroactive reinstatement of its corporate existence by "correcting" the 1996 certificate of dissolution.[5]

b. *No showing of an error in dissolution certificate needing correction.*

Finally, we observe Catalina failed to show a factual misstatement or other defect in the certificate of dissolution requiring correction. (§ 109, subd. (a).) The March 19, 1996 certificate of dissolution certified under penalty of perjury all of the following: the corporation has been completely wound up, its assets had been distributed and its liabilities had been paid, the election to dissolve was made by the vote of all the outstanding shares, and the corporation was dissolved.

These statements are contradicted by the purported certificate of revocation of dissolution, which now asserts under penalty of perjury that the corporation, in fact, had not been wound up and its assets had not been distributed. However, a certificate of correction shall not "alter the wording of any resolution or written consent which was in fact adopted by the board or the shareholders . . . ." (§ 109, subd. (a).)

Further, Catalina does not explain the discrepancy between its two filings. Catalina simply asserts it filed the certificate of dissolution out of its erroneous belief in 1996 that its continued corporate existence in California was unnecessary. Assuming arguendo Catalina was mistaken in its *motivation* for filing the certificate of dissolution in 1996, the trial court properly

---

[5]We note that a "voluntary election to wind up and dissolve may be revoked *prior to distribution of any assets*" and the corporation then files a certificate evidencing the revocation of its election to wind up and dissolve. (§ 1902, subd. (a), italics added.) However, the statutory scheme does not authorize the filing of a postdissolution certificate of revocation of dissolution.

rejected Catalina's contention that the 1996 filing contained a factual misstatement or any other error or defect requiring correction. (§ 109, subd. (a).)[6,7]

## DISPOSITION

The judgment is affirmed. Catalina shall bear costs on appeal.

Croskey, J., and Aldrich, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 21, 2002.

---

[6]The Secretary points out that nothing prevents the formation of a new corporation under the name of Catalina Investments, Inc., and apparently, that new corporation already has been established.

[7]Catalina's contention the trial court was hostile to its position is unsupported by the reporter's transcript, which this court has reviewed in its entirety.