Filed 8/18/22  In re I.G. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re I.G., a Person Coming Under the Juvenile Court Law. | |
| | D080227 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ004712) |
| Plaintiff and Respondent, | |
| v. | |
| N.W., | |
| Defendant and Appellant. | |

1

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge. Reversed and remanded with directions.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Lisa Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

N.W. (Mother) appeals from the jurisdictional and dispositional orders in the Welfare and Institutions Code section 300[1] dependency proceedings for her minor daughter, I.G., in which the juvenile court found that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) did not apply to her case. Mother's sole contention on appeal is that the San Diego County Health and Human Services Agency (Agency) did not meet its initial ICWA inquiry duty under section 224.2 because it did not make reasonable efforts to contact the maternal grandfather regarding I.G.'s possible Native American heritage. The Agency concedes that we should conditionally reverse the jurisdictional and dispositional orders and remand the matter for the limited purpose of compliance with ICWA and section 224.2. Based on our review of the record, we agree with Mother and the Agency. Accordingly, we will conditionally reverse the jurisdictional and dispositional orders and remand the matter with directions for the limited purpose of compliance with ICWA and section 224.2.

---

[1] All statutory reference are to the Welfare and Institution Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On November 30, 2021, the Agency filed a section 300, subdivision (b)(1) petition for then two-year-old I.G., alleging that she was at substantial risk of suffering serious physical harm or illness as a result of the willful or negligent failure of her parent to supervise or protect her adequately from the conduct of a custodian with whom she had been left. In its detention report, the Agency stated that both Mother and T.M., I.G.'s father (Father), denied that they had any Native American heritage. The Agency stated its belief that ICWA did not apply to I.G.'s case and recommended that the juvenile court make such a finding.

At the detention hearing on December 1, the court inquired about I.G.'s possible Native American heritage. Father's counsel represented that Father would testify that he did not have any Native American heritage. Mother's counsel represented that Mother reported that she had Native American heritage, indicating that the maternal grandmother had told Mother about such heritage when she was very young. Her counsel provided the court and the Agency with the maternal grandmother's name and phone number and identified the tribe as the Cherokee Wolf Clan. The court deferred its decision on the application of ICWA to I.G.'s case, pending an inquiry by the Agency into her Native American heritage. The court then found the Agency had made a prima facie showing in support of its petition and detained I.G. in out-of-home care.

---

[2] Because Mother's sole contention on appeal challenges the compliance by the Agency with its initial ICWA inquiry duties, we limit our discussion of the facts and procedural history to information necessary to determine that issue.

3

In its jurisdiction and disposition report, the Agency stated that it had contacted the maternal grandmother, who reported that she had lived with the Cherokee Wolf Clan on a reservation in Yuma, Tennessee. The maternal grandmother reported that Mother and another daughter had attended schools on the reservation. She stated that they were recognized by the State of Tennessee as part of the Cherokee Wolf Clan and she was attempting to get her family enrolled through the Apache tribe. Mother told an Agency social worker that she had been raised by her mother (i.e., the maternal grandmother) and her stepfather (i.e., the maternal step-grandfather), and she had only recently started to rebuild her relationship with her biological father (i.e., I.G.'s biological maternal grandfather). The maternal grandfather occasionally called Mother. Mother gave the social worker several character letters, including a letter from the maternal grandfather that was attached to the report. The Agency recommended that the court find that there was reason to believe I.G. was an Indian child and order it to conduct further inquiry regarding I.G.'s possible status as an Indian child.

The Agency stated that it had sent certified letters and e-mails to 11 federally recognized Cherokee and Apache tribes inquiring about I.G.'s possible status as an Indian child. The Agency subsequently received responses from many of those tribes, each of which stated that I.G. was not an enrolled member or eligible for enrollment.

At the January 2022 pretrial status conference, the Agency's counsel informed the court about its ICWA inquiries and stated its belief that sufficient inquiry of federally recognized tribes had been made regarding I.G.'s possible status as an Indian child. The court deferred making any findings on the application of ICWA pending further responses from the tribes contacted by the Agency.

4

In a February addendum report, the Agency stated that its ICWA specialist was unable to locate the Cherokee Wolf Clan as a tribe included in the federal registry and concluded that it therefore did not meet the criteria for ICWA notice. The Agency learned that the Cherokee Wolf Clan was part of the Cherokee Nation consortium.

At the contested jurisdiction and disposition hearing on February 24, the court found that the petition's allegations were true, declared I.G. a dependent of the court, removed her from Mother's custody, and placed her in foster care. The court further found that the Agency had made a reasonable inquiry to determine whether I.G. is or may be an Indian child under ICWA. Based on the Agency's inquiry, the court found there was no reason to know that I.G. is an Indian child. The court therefore found, without prejudice, that ICWA did not apply to I.G.'s case.

On March 10, Mother filed a notice of appeal, challenging the February 24 jurisdictional and dispositional orders.[3] On June 14, the Agency filed a combined motion to augment the record and motion to dismiss the appeal based on mootness. On June 24, we issued an order stating that this court would consider those motions concurrently with this appeal.

DISCUSSION

I

*ICWA Inquiry Duties*

Congress enacted ICWA to address concerns regarding the separation of Native American children from their tribes through adoption or foster care placement. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) ICWA

---

[3] Father has not appealed the jurisdictional and dispositional orders.

provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and their right to intervene. (25 U.S.C. § 1912(a); see also, *Isaiah W.*, *supra*, at p. 8.) California law also requires such notice. (§ 224.3, subd. (a) ["If a court [or] a social worker . . . knows or has reason to know . . . that an Indian child is involved, notice pursuant to [ICWA] shall be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement . . . ."].) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a), (b).)

Effective January 1, 2019, sections 224.2 and 224.3 were enacted, setting forth California's current ICWA inquiry and notice requirements for juvenile dependency cases. (Stats. 2018, ch. 833, §§ 5, 7.) Under sections 224.2 and 224.3, the Agency and the juvenile court are generally obligated to: (1) conduct an initial inquiry regarding whether there is a reason to believe the child is an Indian child; (2) if there is, then further inquire whether there is a reason to know the child is an Indian child; and (3) if there is, then provide ICWA notice to allow the tribe to make a determination regarding the child's tribal membership. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1052; *In re Austin J.* (2020) 47 Cal.App.5th 870, 882-885.)

Specifically, section 224.2, subdivision (a), imposes on the juvenile court and the Agency "*an affirmative and continuing duty to inquire* whether a child for whom a petition under Section 300 . . . may be, or has been filed, is

6

or may be an Indian child[.]"  (Italics added.)  Section 224.2, subdivision (b), establishes the Agency's duty of initial inquiry, providing:

> "If a child is placed into the temporary custody of [the Agency] . . . , [the Agency] . . . has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family memb*ers, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (Italics added.)

Section 224.2, subdivision (e), imposes a duty of further inquiry, providing: "If the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is a reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  Before the juvenile court can find that ICWA does not apply to a child's case, it must make a finding that "due diligence as required in this section [has] been conducted."  (§ 224.2, subd. (i)(2).)

We review a juvenile court's findings that the Agency has made reasonable inquiries regarding a child's possible Native American heritage under ICWA and that the Agency has complied with ICWA's notice requirements, or that no such notice is required, for substantial evidence.  (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.)

7

II

*Noncompliance with ICWA Initial Inquiry Duties*

Mother contends, and the Agency concedes, that substantial evidence does not support the juvenile court's finding that ICWA does not apply to I.G.'s case and, in particular, that substantial evidence does not support its finding that the Agency complied with its initial inquiry obligations under section 224.2. We agree.

Mother asserts that the Agency's initial ICWA inquiry was deficient because it failed to ask I.G.'s maternal grandfather about the possibility of her Native American heritage, despite the fact that the Agency had received from Mother a copy of a letter from him in support of Mother in this case. The record does not show that the Agency contacted the maternal grandfather, much less asked him about any possible Native American heritage. The Agency's duty to make an initial inquiry into I.G.'s possible Native American heritage applies to "extended family members," which term includes the maternal grandfather. (§ 224.2, subd. (b).) The Agency concedes, and we agree, it failed to comply with its initial ICWA inquiry duty in this case.

Because substantial evidence does not support the juvenile court's findings at the jurisdiction and disposition hearing that ICWA did not apply to I.G.'s case and that the Agency complied with its initial ICWA inquiry obligations regarding I.G.'s possible Native American heritage, we conclude the court erred by finding at that hearing that ICWA did not apply to her case.

We further conclude that the Agency inquiry error is prejudicial and requires conditional reversal of the jurisdictional and dispositional orders

8

with remand of the matter for the limited purpose of compliance with the inquiry provisions of ICWA and section 224.2.  Because the failures in this case concerned the Agency's state statutory duties to inquire regarding I.G.'s possible Native American heritage, we must reverse the orders if the error is prejudicial under the state law standard for prejudicial error.  (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [miscarriage of justice may be found when court concludes it is reasonably probable result more favorable to appellant would have been reached in absence of error].)  As Mother notes, there currently is a split of authority among the California courts of appeal regarding how to apply this general state law standard for prejudicial error to juvenile dependency cases in which agencies and/or juvenile courts have failed to satisfy their statutory duties of inquiry regarding a child's possible Native American heritage.  (See, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 201, 206-207 [agency's failure to conduct ICWA inquiry is per se reversible error and miscarriage of justice]; *In re J.C.* (2022) 77 Cal.App.5th 70, 80 [reversal and remand required because agency's failure to make adequate inquiry made it impossible for parent to show prejudice]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [same]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [same]; *In re N.G.* (2018) 27 Cal.App.5th 474, 484 [same]; cf. *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 (*Antonio R.*) [error is prejudicial if information that could have been obtained from extended family members is likely to be meaningful in determining whether child is Indian child]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744-745 (*Benjamin M.*) [reversal required where record indicates there was readily obtainable information

9

that was likely to bear meaningfully on question of whether child is Indian child]; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 774, 779 [failure to comply with duty of initial inquiry is harmless error unless record and any proffer by appellant suggest reason to believe child may be Indian child]; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1071 [failure to comply with inquiry duty is harmless error unless appellant makes offer of proof or other assertion of Native American heritage]; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431 [unless appellant makes representation of Indian heritage, there can be no prejudice and no miscarriage of justice requiring reversal].) The California Supreme Court has yet to address this question or otherwise resolve the current split of authority.

However, for purposes of our disposition of this appeal, we need not, and do not, weigh in on this highly disputed question of the proper standard for prejudicial error in cases in which agencies and/or juvenile courts have failed to satisfy their statutory duties of initial and continuing inquiry under section 224.2. Rather, we conclude that regardless of the particular standard for prejudicial error applied, there has been a miscarriage of justice in the circumstances of this case based on the failures of the Agency to satisfy its statutory duties of initial and continuing inquiry. (Cal. Const., art. VI, § 13.) For example, if we were to apply the apparent "middle ground" standard set forth in *Antonio R.* and *Benjamin M.*, prejudicial error would clearly be shown. Because the Agency did not satisfy its initial inquiry duty, we cannot know what information such inquiry might have revealed regarding I.G.'s possible Native American heritage. Based on its failure to reasonably inquire of I.G.'s maternal grandfather (for whom it had contact information) regarding her possible Native American heritage, we must presume that there was readily obtainable information from him that was likely to bear

10

meaningfully on the question of whether there is reason to believe that she is an Indian child under ICWA. (Cf. *Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 [where agency fails to discharge its initial duty of inquiry and juvenile court finds ICWA does not apply, "the error is in most circumstances . . . prejudicial and reversible"]; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 745-746.)

III

*Motion to Augment and Motion to Dismiss Appeal*

On June 14, 2022, the Agency filed combined motions to augment the record and dismiss the appeal as moot. In its motion to augment, the Agency asks that we augment the record with two documents: (1) Exhibit A, which is its addendum report filed with the juvenile court on June 6, 2022; and (2) Exhibit B, which is the juvenile court's minute order for its June 7, 2022 hearing. The Agency argues that augmentation of the record with information regarding events occurring *after* the February 24, 2022 jurisdictional and dispositional orders challenged on appeal is appropriate and would show that it has made additional inquiry regarding whether I.G. may be an Indian child. In particular, the Agency represents that the information would show that it has attempted, albeit unsuccessfully, to contact I.G.'s maternal grandfather. Exhibit A attached to the motion to augment indicates that an Agency social worker made an attempt on June 3, 2022, to reach the maternal grandfather, but was unable to leave a voicemail message because the phone number's voicemail had not been set up. Exhibit A also indicates the social worker made a similar unsuccessful attempt on June 6, 2022 to reach the maternal grandfather. Exhibit B attached to the motion to augment is a copy of the minute order for a special hearing on June 7, 2022 indicating that the juvenile court granted the Agency's unopposed

11

request to continue the matter until July 5, 2022 to allow further ICWA inquiry to be made.

In her opposition to the motion to augment, Mother argues that the Agency's motion to augment the record was untimely filed and improperly seeks to augment the record with new evidence occurring after the February 24, 2022 jurisdictional and dispositional orders that are challenged on appeal.

In an appeal challenging an order in a juvenile dependency proceeding in the San Diego County Superior Court, a respondent "must serve and file any . . . motion [to augment the record] . . . within 15 days after the appellant's opening brief is filed." (Cal. Rules of Court, rule 8.416(d)(2).[4]) On May 13, 2022, Mother filed her appellant's opening brief. Accordingly, the Agency had 15 days thereafter (i.e., until Tuesday, May 31, 2022 as extended for the Memorial Day holiday weekend) to file a motion to augment the record. (Rule 8.416(d)(2).) Because the Agency did not file its motion to augment the record until June 14, 2022, we may deny its motion as untimely filed, absent any good cause shown for its untimeliness. The Agency's motion to augment does not show any good cause for its untimeliness. Accordingly, we deny its motion to augment. (Rule 8.416(d)(2).)

Assuming arguendo that the Agency's motion to augment was timely filed or it had shown good cause for its untimeliness, we nevertheless would deny that motion because it seeks to augment the record with information that occurred *after* the February 24, 2022 jurisdictional and dispositional orders being challenged by Mother on appeal. (See, e.g., *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [absent exceptional circumstances, appellate court should not consider postjudgment evidence]; *In re Heather B.* (2002) 98 Cal.App.4th

---

4     All further references to rules are to the California Rules of Court.

11, 13 [appeal reviews correctness of judgment or order as of time of its rendition upon record of matters which were before juvenile court for its consideration].) "Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment [or order] was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) "The augmentation procedure cannot be used to bring up matters occurring during the pendency of the appeal because those matters are outside the superior court record. [Citation.]" (*In re K.M.* (2015) 242 Cal.App.4th 450, 456 (*K.M.*).) Because the Agency's motion seeks to augment the record with information that arose after the February 24, 2022 orders being appealed, we would deny its motion regardless of its untimeliness.[5] (Cf. *K.M., supra*, at p. 459 [denied motion to augment record with new postjudgment evidence].) *In re Allison B.* (2022) 79 Cal.App.5th 214, cited by the Agency, is factually and procedurally inapposite to this case and does not persuade us to reach a contrary conclusion.

The Agency also filed a motion to dismiss the instant appeal based on mootness, citing the post-February 24, 2022 order information that it sought

---

[5] The Agency's motion to augment does not alternatively request that we consider its motion to be a request for judicial notice. Nevertheless, assuming arguendo the Agency had made such a request, we would deny its request to take judicial notice of Exhibits A and B, which consist solely of information arising *after* the orders being appealed and are therefore irrelevant to the sole contention on appeal (i.e., whether the juvenile court erred by finding at the February 24, 2022 jurisdictional and dispositional hearing that the Agency had made reasonable ICWA inquiry regarding whether I.G. was an Indian child and that, based thereon, ICWA did not apply to her case).

to have augmented as part of the record as discussed above (i.e., Exhibits A & B), which information it argued would show that it had complied with its ICWA inquiry duties. However, because we have denied the Agency's motion to augment the record with that information (and any alternative request for judicial notice of that information), we conclude there is no information in the record showing that the instant appeal is moot or that we cannot grant effective relief in this case.[6] Accordingly, we deny the Agency's motion to dismiss the appeal.

## DISPOSITION

The jurisdictional and dispositional orders issued on February 24, 2022 are conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of ICWA and section 224.2, subdivision (b) and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's inquiry satisfied its statutory duty of inquiry. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that I.G. is an Indian child, the orders issued on February 24, 2022, shall be reinstated. Alternatively, if after completing the inquiry the Agency

---

[6] In any event, assuming arguendo that Exhibits A and B were properly augmented in the record or we were to take judicial notice of them, we would conclude that those exhibits do not necessarily show, as the Agency asserts, that it has fully complied with its ICWA inquiry duties. Rather, it appears that the Agency's social worker, at most, made two unsuccessful attempts to contact the maternal grandfather.

14

or the juvenile court has reason to believe that I.G. is an Indian child, the court shall proceed accordingly.

O'ROURKE, Acting P. J.

WE CONCUR:

IRION, J.

DATO, J.

15