Filed 6/30/25 Wan v. Cheng CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BONNIE KWOK LING WAN et al., | B335658 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 19STCV46980) |
| v. | |
| YUAN HAO CHENG, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed in part, reversed in part.

Law Offices of Bin Li & Associates and Bin Li for Plaintiffs and Appellants.

Shioda Langley & Change, Steven P. Chang, Gene H. Shioda and Heidi M. Cheng for Defendant and Respondent.

———————————

In the midst of a lawsuit in which it accused two of its former executives of corporate looting, plaintiff and appellant E & E Optics, Inc. (E&E) voluntarily dissolved itself. The certificate of dissolution E&E filed with the Secretary of State declared that "[t]he [c]orporation has been completely wound up." Shortly before trial was to begin, one of the executives in question, defendant and respondent Yuan Hao (Eric) Cheng,[1] filed a motion to dismiss on the ground that E&E, as a dissolved corporation, lacked standing to continue prosecuting its claims against him. The trial court agreed and granted the motion.

This was error. Under Corporations Code section 2010,[2] E&E continued to exist for purposes of the litigation despite its dissolution. The statute and relevant case law affirm that a dissolved corporation may continue to participate in litigation either as a plaintiff or as a defendant. We therefore reverse the dismissal of E&E's claims and affirm the remainder of the judgment.

## FACTS AND PROCEEDINGS BELOW

E&E, under the ownership of plaintiff and appellant Bonnie Kwok Ling Wan, sold contact lenses and other vision-related products. On December 31, 2019, E&E and Wan filed a complaint against Eric, his brother Alex, and WK Vision Inc. (WK Vision) for breach of fiduciary duty, fraud, and four other causes

_____

[1] To avoid confusion between the two individual defendants in this case, we follow the parties' practice in referring to Yuan Hao (Eric) Cheng as Eric, and Yuan Feng (Alex) Cheng as Alex. We intend no disrespect.

[2] Unless otherwise specified, subsequent statutory references are to the Corporations Code.

2

of action.[3]  Wan had hired Alex in 2015 to serve as E&E's chief executive officer, and Alex in turn hired Eric as the company's vice president.  The complaint alleged that, unbeknownst to Wan, the two brothers soon formed their own company, WK Vision, which they operated out of E&E's offices.  "WK Vision's operations and function [were] to sell the same contact lenses and associated products as E&E.  WK [V]ision would purchase these goods from E&E and then re-sell E&E's products to E&E's customers at a higher (market) price.  WK Vision did not improve, alter, or change the products in any way."  The plaintiffs claimed they had suffered at least $350,000 in damages from this scheme.

Eric denied the allegations.  He claimed that another E&E employee, Tiffany Huang, formed WK Vision at the direction of Wan and Alex to serve as a "buying group" for E&E, and that Wan and E&E "were aware that WK Vision used the same office space and same employees as E&E."  Eric further alleged that he drew no salary from WK Vision, and that he returned his shares in WK Vision for no compensation when his employment was terminated in 2017.

---

[3] The trial court dismissed Alex with prejudice on the ground that the plaintiffs had failed to serve him properly, a decision the plaintiffs do not challenge.  The court also entered a default against WK Vision.  There is no indication in the record that WK Vision ever sought relief from the default, nor that a default judgment was entered against it.

Five days before trial was set to begin, Eric filed a motion in limine[4] to dismiss the case on the ground that E&E lacked standing because, 10 months earlier, E&E had dissolved itself.[5] E&E's certificate of dissolution was filed on a standard form that included preprinted "[r]equired [s]tatements" declaring that "[t]he [c]orporation has been completely wound up and is dissolved," and that "[t]he known assets have been distributed to the persons entitled thereto or the corporation acquired no known assets." The form also included a statement affirming that "[t]he dissolution was made by a vote of ALL of the shareholders of the . . . corporation." Wan signed the form, declaring under penalty of perjury that she was "the sole director or a majority of the directors now in office," and "that the matters set forth in this certificate are true and correct of [her] own knowledge."

The trial court granted the motion, explaining, "[y]ou don't have a corporation. It's completely wound up. That was signed off by [Wan], and it indicated on that form that she checked that all members voted for that. So, if, indeed, there was an issue

---

[4] At oral argument, E&E objected to Eric's late challenge to E&E's standing by way of a motion in limine. E&E made no such argument in its appellate briefing. Because we reverse on the merits, we need not decide whether E&E forfeited this contention or, if it did not, whether the trial court erred by failing to afford E&E sufficient time to respond to a dispositive motion.

[5] Eric's motion also asserted that Wan lacked standing because she based her individual claims on her status as an E&E shareholder, and she was thus required to file a derivative action (which she had not done). The trial court agreed and dismissed Wan's claims. Wan appealed alongside E&E, but in the plaintiffs' appellate briefing, she does not contest the judgment against her. We therefore affirm that aspect of the judgment.

4

about whether the company should have been dissolved because of these outstanding claims . . . [or] causes of action for fraud, I would have expected to see something different to keep that going so that the proper remedy could be fashioned.  That didn't happen here."

The court entered judgment in favor of Eric, and E&E timely appealed.

## DISCUSSION

E&E argues that its dissolution did not deprive E&E of standing to prosecute its case against Eric.  Because this is a question of law that does not depend on resolving any underlying factual disputes, our review is de novo.  (*Loeber v. Lakeside Joint School Dist.* (2024) 103 Cal.App.5th 552, 570.)

"At common law, the dissolution of a corporation was treated like the death of a natural person:  Once it had dissolved, a corporation ceased to exist and could not sue or be sued, and any actions pending against it abated."  (*Peñasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1184.)  But "California abandoned the common law rule governing the effect of a corporation's dissolution by the enactment of former Civil Code section 399 in 1929."  (*Ibid.*, fn. omitted.)  Section 2010, the successor statute to former Civil Code section 399, provides that "[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, *prosecuting and defending actions by or against it* and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof."  (§ 2010, subd. (a), italics added.)

5

"Under our [state's] statutory scheme, the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity. In *Boyle v. Lakeview Creamery Co.* (1937) 9 Cal.2d 16 . . . , [the Supreme Court] stated that the 'only purpose' of former Civil Code section 399, a predecessor of section 2010, was 'to stop further doing of business as a going concern, and limit corporate activities to winding up.' ([*Boyle, supra*,] . . . at p. 20.) Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." (*Peñasquitos, Inc. v. Superior Court*, *supra*, 53 Cal.3d at p. 1190.)

Both the statutory language and *Peñasquitos*'s gloss on it support E&E's position, namely that although E&E's dissolution meant it was no longer a going concern, the dissolution did not prohibit E&E from pursuing its claims against Eric. Eric argues *Peñasquitos* held only that after dissolution, a corporation "continues to exist for purposes of winding up its affairs and, in particular, for discharging obligations and *defending lawsuits*." (*Peñasquitos, Inc. v. Superior Court*, *supra*, 53 Cal.3d at p. 1183, italics added.) The trial court in this case agreed that a dissolved corporation may defend but not prosecute suits, stating that it would be an "oxymoron for a company that no longer exists [to be] able to bring an action." In the trial court's view, that would be "different from a dissolved company that's being sued. Of course, you can see the obvious public policy in allowing that to happen, because [otherwise] the companies would just go buck wild, dissolve [themselves], and say, 'Hey, we escaped liability.' "

Such a limitation finds no support in the text of section 2010. The statute states that a dissolved corporation "continues to exist for the purpose of . . . *prosecuting and defending actions*

by or against it." (*Id.*, subd. (a), italics added.) Subdivision (b) of the same section further clarifies that "[n]o action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof." (*Id.*, subd. (b).) To bar E&E from continuing to prosecute its case against Eric would be contrary to the plain text of the statute, and we are aware of no case holding otherwise.

The court in *Peñasquitos* limited its discussion to dissolved corporations defending themselves in litigation because that was the issue presented in that case. (See *Peñasquitos, Inc. v. Superior Court*, *supra*, 53 Cal.3d at pp. 1183-1184.) The court had no occasion to address suits brought by a dissolved corporation, and " ' " 'cases are not authority for propositions not considered.' " ' " (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1252.) When courts have addressed the issue, they have uniformly decided that the statute means what it says. In a case addressing the predecessor to section 2010, our Supreme Court stated that a dissolved "corporation may even bring actions." (*Boyle v. Lakeview Creamery Co.*, *supra*, 9 Cal.2d at p. 20.) In *A.B. Concrete Coating v. Wells Fargo Bank* (E.D. Cal. 2020) 491 F.Supp.3d 727, a federal district court applying California law upheld a corporation's right to prosecute a claim filed after the corporation had dissolved. (*Id.* at pp. 732-733; see also *Southwest Exploration Co. v. Riddell* (9th Cir. 1966) 362 F.2d 833, 835, fn.1.) In *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, the court held that a dissolved corporation's right to prosecute lawsuits extends to derivative suits filed by the corporation's shareholders. (*Id.* at pp. 212-217.)

Eric argues we should nevertheless affirm the trial court's dismissal because this case was not within the scope of E&E's winding-up process. He notes that E&E's certificate of dissolution, which Wan signed under penalty of perjury, stated that E&E "has been completely wound up and is dissolved," and that "[t]he known assets have been distributed to the persons entitled thereto or the corporation acquired no known assets." Eric claims that to allow E&E to pursue this litigation would imply that E&E was not yet completely wound up, and that it still had an asset—its claim against him—that had not been distributed.

The federal court in *A.B. Concrete Coating* rejected a similar argument, holding that "[a]fter filing a certificate of dissolution, a corporation's existence ceases '*except for the limited purpose of further winding up of its affairs*.' [Citation.] Thus, the filing of the certificate of dissolution only marked the end of [the] plaintiff's normal business activities, not the completion of its winding-up process . . . ." (*A.B. Concrete Coating v. Wells Fargo Bank*, *supra*, 491 F.Supp.3d at p. 733, quoting *Catalina Invs. Inc. v. Jones* (2002) 98 Cal.App.4th 1, 7.) We find the court's reasoning persuasive. To dissolve a corporation voluntarily, the majority of the directors must declare, as Wan did, that the corporation has been completely wound up, and its assets have been distributed. (§ 1905, subd. (a)(1) & (3); *A.B. Concrete Coating*, at p. 733.) The corporation's dissolution becomes effective "as of the date of filing the certificate of dissolution." (§ 1905.1.)

But section 2010 specifically contemplates the possibility that additional winding up may be required after dissolution. Subdivision (a) of the statute states that after dissolution, a

8

dissolved corporation does not exist "for the purpose of continuing business *except so far as necessary for the winding up thereof.*" (*Id.*, subd. (a), italics added.) Subdivision (c) states that "[a]ny assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly." (*Id.*, subd. (c); see also *A.B. Concrete Coating v. Wells Fargo Bank, supra*, 491 F.Supp.3d at p. 733.)[6] If the filing of a certificate of dissolution precluded any further winding up, it would mean that these provisions regarding the limited continued existence of dissolved corporations would not apply to any corporation that dissolved voluntarily. There is no indication the Legislature intended such a result.

Finally, Eric contends that when Wan signed the certificate of dissolution affirming that E&E had been completely wound up and its known assets had been distributed, she implicitly "admi[tted] that the lawsuit was no longer an asset of E&E." We disagree. Under section 2010, subdivision (c), "[a]ny assets *inadvertently or otherwise* omitted from the winding up continue in the dissolved corporation . . . ." (*Ibid.*, italics added.) Thus, even if Wan intentionally omitted E&E's cause of action from the

---

[6] Eric contends that E&E forfeited any reliance on section 2010, subdivision (c) by failing to cite that portion of the statute before the trial court. We disagree. Section 2010, subdivision (c) merely clarifies what happens to assets omitted from the winding up "inadvertently or otherwise." Subdivision (a) of the same statute provides dissolved corporations with the authority to prosecute or continue to prosecute cases, and E&E cited subdivision (a) before the trial court.

winding up, under the statute, it continued to belong to E&E. In addition, Eric argued before the trial court that Wan's claims were derivative in nature, and the trial court agreed. In a derivative suit, " ' "the right of action and recovery belongs to . . . the *corporation*" ' " (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 793, quoting *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 650-651), and the stockholder who brings the suit " ' "is merely a nominal party plaintiff." ' " (*Favila v. Katten Muchin Rosenman LLP*, *supra*, 188 Cal.App.4th at p. 222.) For Eric to reverse course and now assert that Wan's claim belonged to her personally subjects him to judicial estoppel, which " ' "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." ' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986.)

### DISPOSITION

The trial court's judgment is reversed as to E&E's causes of action against Eric but is otherwise affirmed. E&E is awarded its costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


ROTHSCHILD, P. J.        M. KIM, J.


10